**STATE of Texas, Appellant,**

v.

**Barney MYERS, Appellee.**

No. 12832.

Court of Civil Appeals of Texas.

San Antonio.

April 20, 1955.

Rehearing Denied June 15, 1955.

John Ben Shepperd, Atty. Gen., W. V. Geppert, Marietta McGregor Payne, William W. Guild, Assts. Atty. Gen., for appellant.

T. H. Burruss, Corpus Christi, for appellee.

POPE, Justice.

This is an appeal from a judgment which concerns the meaning of a contract for the sale of land. The case was tried without a jury. Texas War Veterans, an alleged defunct charitable corporation, acting through a receiver, is the vendor and Barney Myers is the purchaser. The State of Texas has appealed from the judgment which construed the contract so as to allow Myers a total of $5,325.81 as a credit on the agreed purchase price of the property. The State contends that the amount allowed was actually paid as rent instead of payments on the purchase price. The points present these controlling legal matters: (1) Does the State have a justiciable interest in the protection of the assets of the defunct charitable corporation? (2) Under the terms of the contract to sell, was the payment of $5,325.81 by Myers, rent or payments on the purchase price?

The State has a justiciable interest in this suit. Texas War Veterans was originally incorporated as a charitable organization, but in January, 1953, its charter was forfeited. The original incorporators, together with the survivors of certain deceased persons, then met and elected three trustees who were authorized to wind up the affairs of the corporation. The corporation owned both cash and real estate. The trustees and original incorporators disagreed as to the disposition of those assets. Several of the original incorporators and the survivors of certain deceased incorporators filed suit against Cleveland Sammons and DeWitt McGee, two of the three persons named as trustees, to wind up the affairs of the corporation. The plaintiffs also named the State of Texas as a defendant pro forma. Plaintiffs prayed for the appointment of a receiver to liquidate the corporation. Those persons were willing to permit the sum of $5,325.81 to be applied on the purchase price. Sammons and McGee cross-acted and they too named the State as a party. They urged that the Attorney-General had the duty to administer the assets of the corporation as an unadministered public charitable trust. They asserted that the original plaintiffs intended to divide the assets among themselves and contested their right to do so. The State answered, cross-acted, and urged that the assets should be held in trust for the purposes stated in the corporate charter. The State also sought recovery of franchise taxes, penalties and interest.

Barney Myers intervened in the suit and claimed his rights under a contract to purchase certain real estate from the War Veterans Corporation. The trial court

severed the causes of action, and the principal matter before us in this appeal is the controversy between Myers and the corporation with respect to the payments on the contract to purchase.

■ The State is a proper party to this controversy. The original plaintiffs named the State as a defendant, as did also the cross-plaintiffs, Sammons and McGee. The State is also in court as a cross-plaintiff. Appellee, Myers, did not challenge the State's status as a party in the trial court, but raised that point for the first time by way of a motion to dismiss the appeal. The Attorney-General is a proper party to protect and enforce a public charitable trust such as is here concerned. Miller v. Davis, 136 Tex. 299, 150 S.W.2d 973, 136 A.L.R. 177; Allred v. Beggs, 125 Tex. 584, 84 S. W.2d 223; Carroll v. City of Beaumont, Tex.Civ.App., 18 S.W.2d 813, 820; 10 Am. Jur., Charities, § 115.5; 14 C.J.S., Charities, § 62(b); Note, 124 A.L.R. 1237, 1238. In the present appeal, the issue is whether Myers will be allowed a $5,325.81 credit upon the purchase price of the realty, or whether he still owes that amount. The State has an interest in protecting the assets of the sale as a part of the corporate assets which it must administer. The State also has asserted a claim against those assets.

The second point concerns the sum of $5,325.81—whether it was rent or additional payment on the real estate sales contract. In April of 1953, Barney Myers entered into a contract with Texas War Veterans for the purchase of Lots 1 and 2, Block 69, Beach Portion of the City of Corpus Christi. The receiver appointed by the court, and the court in its judgment confirmed that sale. The property for many years was used as a sports arena. Myers agreed to pay $20,000 cash on June 28, 1953, and paid $1,000 as earnest money. He obtained a commitment for the full purchase price, but before the transaction was closed the City of Corpus Christi brought suit to enjoin the operation of the property as a sports arena until the building met the fire and health standards required by

local ordinances. Myers defended that suit and spent approximately $4,500 to bring the structure up to the city standards. In the meantime, he lost his commitment, and in order to save the trade and extend the closing date, he made additional payments on the agreed purchase price. Myers has admittedly paid a total of $5,000 on the purchase of the property.

For many years before agreeing to buy the property, Myers had occupied the premises as a tenant. He regularly paid, as weekly rentals, the sum of ten per cent of the gross gate receipts and twenty-five per cent of the concession receipts. Myers continued making weekly payments after he executed the purchase contract. From May 28, 1953, to July 22, 1954, he paid a total of $5,325.81, which amount he insists should be applied on the purchase price and should not be treated as rent.

■ The trial court erred in treating the weekly payments as payments on the contract. The total absence of any mention of such weekly payments or such method of paying for the property is convincing reason that the parties did not so intend. The contract called for a cash payment on closing date. The fact also that each of the weekly payments admittedly included an undisclosed amount for utilities, which could not be considered as rent, is still another reason why they were not purchase money. But the complete answer to the problem is found in the contract itself, which expressly evidences the intent of the parties. Paragraph nine of the contract provides: "This deal shall be closed on or before the 28th day of June, 1953, and possession is to be given on date of closing." The last four words were typed into the contract. In our opinion, the words mean that the purchaser would take possession as owner "on date of closing." Until that event happened, any possession he enjoyed was not by force of the contract to buy, but was by reason of his pre-existing tenancy which obligated him to pay rentals. The contract is controlling of intent in the absence of some other contract, and the record is silent of any agreement that the rentals should apply on the purchase

price. Myers states that he "considered" the sums as payments on the purchase price, but there is no proof that the vendor so considered the payments. Myers' unilateral intent, uncommunicated to the vendor, did not vary or change the terms of the written contract which expressly stated the time Myers would occupy the premises as owner. Some, but not all, of the original incorporators filed an instrument in evidence expressing their consent that the weekly payments be applied on the purchase contract. Such consent is wholly immaterial. The construction of contracts is a question of law. Their consent does not change either the terms of the contract or the law. When we have an express contract which declares the rights to possession, we need not resort to cases which determine the rights of vendee who goes into possession by force of an executory contract that is silent on the subject. As stated in Williston on Contracts:

> "In the law of contracts unless the agreement of the parties is in violation of public policy, it is the duty of the court to enforce that agreement and not to extend the duties of a promisor beyond what he has agreed to assume. There is certainly no public policy requiring the purchaser to be the owner of property any sooner than the agreement specifies; and to hold that he is the owner now when he has agreed to be the owner next year is an impropriety and an injustice." 4 Williston on Contracts (Rev.Ed.), § 939; cf. Rives v. James, Tex.Civ.App., 3 S.W.2d 932.

> "Unless the contract expressly or by necessary implication gives the purchaser a right of possession, he is not entitled thereto, even though in possession as lessee when the contract was made; nor is he entitled to the rents and profits until the time when he is entitled to possession." 4 Williston on Contracts (Rev.Ed.), § 937; accord, Roberts v. Armstrong, Tex.Com.App., 231 S.W. 371; Hagelstein v. Campbell, Tex.Civ.App. 209 S.W. 461; 51 C.J.S., Landlord & Tenant, §§ 94, 257; Thompson on Real Property (Perm.Ed.), § 4581.

We conclude that Myers was in possession as a tenant, that the contract is decisive of Myers' rights, and that he did not go into possession as equitable owner under the contract. Under this interpretation of the contract, we must reverse and render the judgment.

Reversed and rendered.

### On Motion for Rehearing

Appellee, Myers, in his motion for rehearing contends that the State failed to prove that the funds involved are a part of a public charitable trust which it must administer, and he challenges the parts of the opinion which so state. Appellee correctly points out that all the parties, except the State, deny that the funds are a public charity.

Appellee has failed to give the correct force to the trial court's order of severance of causes of action. The original plaintiffs prayed that the affairs of the corporation be liquidated and distributed among the members of the corporation. The State challenged and defended against such a distribution of the assets on the grounds that the corporation was a defunct charitable corporation.

Whether the assets of the corporation are the assets of a defunct charitable corporation was severed from the action involved in this appeal. The order of severance, the judgment of the court, and the evidence adduced on the trial, demonstrate that the ultimate disposition of the funds is not involved in this appeal. This appeal concerns the severed cause of action which relates to the dispute over what funds are involved at all. The appellee states that the original opinion assumed the fact that the funds are charitable funds, and in that he is exactly correct, for that issue is yet to be determined.

Actually the State did make prima facie proof. The president of the defunct corporation testified without objection about

the original incorporation, stating that it was organized as a non-profit, charitable and benefit association, that it spent up to a thousand dollars a year for those purposes, and that the Secretary of State has suspended the charter of the corporation.

Though the disposition of the funds will be decided in the severed action, appellee would compel the State to prove it in this action as a predicate to its right to appear. This action concerns the matter of protecting funds; the severed action will determine to whom they belong. It would defeat the objects of the severance to require proof of the latter in the present suit.

The motion for rehearing is overruled.