**J. Roy McCOY, Appellant,**

v.

**E. L. POLVADO, Appellee.**

**No. 8996.**

Court of Civil Appeals of Texas, Amarillo

April 30, 1979.

**440**

Harold Phelan, Phelan, Moreland & Phelan, Levelland, for appellant.

James K. Walker, Morton, for appellee.

REYNOLDS, Justice.

The sole question presented is the propriety of a $1,750 judgment for temporary damages resulting to land from the drilling of a gas well. Tested by the applicable measure of damages, the evidence is factually insufficient to support the amount of damages decreed. Reversed and remanded.

J. Roy McCoy became the assignee of a mineral lease given by E. L. Polvado and his wife covering their 241.8 acre tract of land in Cochran County. A drilling contractor engaged by McCoy, who took down and failed to replace forty feet of fence, moved a drilling rig onto grassland in the northeast corner of the tract, and completed a gas well. A surface oil line connects the gas well and nearby tanks, and a surface gas line extends northwesterly from the well and connects it to El Paso Natural Gas Company's pipeline beneath the northwest corner of the tract.

Adjunctive to legal proceedings instituted by McCoy to enable the commencement of operations, Mr. Polvado sought to hold McCoy liable for damages to the land. Polvado did not allege that damages were caused by McCoy's negligent operations, nor that McCoy used more of the premises than was reasonably necessary to comply with the terms of the lease. Rather, Polvado predicated his claim for damages on paragraph 14 of the lease, which reads:

14. Lessee [McCoy] hereby agrees to pay reasonable damages for any actual damages done to growing crops and the surface of the land, including roads, well locations, and tank battery sites. When requested by lessor [Polvados], lessee will bury all pipelines below plow depth. Upon plugging and abandoning of any oil or gas well hereunder, lessee agrees to restore the surface of the land around such drill site to its normal condition, insofar as reasonably possible.

Thus, any liability of McCoy for the claimed damages arises only by reason of the pleaded paragraph 14 of the lease. See Warren Petroleum Corporation v. Monzingo, 157 Tex. 479, 304 S.W.2d 362, 363 (1957).

In testifying, Polvado judicially admitted that no growing crop had been damaged and that there was no permanent damage to the land. Moreover, he acknowledged that McCoy may have needed the land used in the operation. Polvado made no proof of cost of any necessary repair. Instead, his testimony was addressed to the loss of the use of the land. In that setting, both litigants cite Weaver Construction Company v. Rapier, 448 S.W.2d 702, 703 (Tex.Civ.App.—Dallas 1969, no writ), for this measure of damages: damages for temporary injury to land is the reasonable cost of repairs necessary to restore the property to its condition immediately prior to injury plus the loss

occasioned by being deprived of the value of the use of the property. However, it is also written that the loss is to be measured by the value of use of the land *while in its injured condition. Gulf Pipe Line Co. v. Hurst*, 230 S.W. 1024, 1027 (Tex.Civ.App.— San Antonio 1921, no writ). *Accord, Gulf Pipe Line Co. v. Watson*, 8 S.W.2d 957, 959 (Tex.Civ.App.—Forth Worth 1928, no writ).

Polvado testified that when the fence was taken down and not replaced, he could not use an estimated twelve or fourteen acres as pasture land at a probable loss of $20 or $25 per acre (meaning, so he argues on appeal, for each of two years prior to trial, which would compute to a minimum of $480 and a maximum of $700). He further stated that since the fence was down, he decided to put the land in cultivation, but could not do so because the gas lines were on the surface of the land, although it is undisputed that McCoy never was requested to bury the lines. Polvado said that had he been able to plant the acreage in cotton, even though he had no cotton allotment for the acreage, he would have been able to make better than $200 an acre on the basis of what nearby cotton land had made (meaning, so he also argues on appeal, a loss of $2,800 for the year prior to trial).

An abstractor calculated the land occupied by the gas well, an open slush pit and the tanks as being 1.39 acres. He placed a value of $325 an acre on the land.

■ Under the terms of the lease, McCoy had the legal right to enter upon the premises and drill the well, using so much of the premises as was reasonably necessary to comply with the terms of the lease and effectuate its purpose, *Warren Petroleum Corporation v. Monzingo, supra*, 304 S.W.2d at 363; but, McCoy was obligated, independent of breach of contract or liability for tort, to pay damages he caused to growing

crops and to the land, including the well location and tank battery sites. *Accord, Meyer v. Cox*, 252 S.W.2d 207, 208 (Tex.Civ. App.—San Antonio 1952, writ ref'd). The lease did not prohibit the placing of lines on the surface of the land and, there being no request to bury them, permitted that placement. Hence, absent specific allegations of negligence in placing the lines, and none was pleaded here, no right of recovery arose merely because the lines were placed as permitted by the lease. *See Lone Star Gas Co. v. Hutton*, 58 S.W.2d 19, 21 (Tex.Com. App.1933, holdings approved).[1]

■ Resultantly, when the fence, which was a part of the realty, *International & G. N. R. Co. v. McIver*, 40 S.W. 438 (Tex.Civ. App.—1897, writ ref'd), was taken down and not replaced, a temporary injury was visited on the land. The only proof of damages for this injury is a maximum of $700 for the loss of the value of the use of the land as pasture land. And even accepting, in the absence of evidence showing the duration of the injury, Polvado's theory that McCoy's utilization of 1.39 acres for the well and tank sites is a temporary injury to the land under the wording of the lease, rather than a permanent injury to land for which a different measure of damage applies,[2] the damages, applying the $325 an acre value, would amount to $451.75. Yet, the proof of $1,151.75 ($700 + $451.75) maximum damages, without the establishment of any other damages recoverable under the terms of the lease, is factually insufficient to support the finding of $1,750 damages upon which the judgment rests.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded.

1. This case fixes the measure of damages for negligence which prevents the planting and cultivating of a crop on tilled land as only a reasonable rental value of the land, and not the probable value of the crop less the cost of cultivation. 58 S.W.2d at 21.

2. The proper measure of damages for permanent injury to real property is the difference between the reasonable cash market value of the property immediately before and immediately after the injury. *Lone Star Gas Co. v. Hutton*, 58 S.W.2d 19, 20 (Tex.Com.App.1933, holdings approved).