Richard V. ANDERSON et al.,
Appellants,

v.

Truman C. HAVINS, Appellee.

No. 9016.

Court of Civil Appeals of Texas,
Amarillo.

Jan. 30, 1980.

Rehearing Denied in Part Jan. 30, 1980.

Williams, Broughton & Forbis, John T. Forbis, Childress, for appellants.

Carroll Cobb, Lubbock, for appellee.

### ON MOTION FOR REHEARING

COUNTISS, Justice.

Upon further consideration, we conclude that appellants' motion for rehearing should be granted in part. We, therefore, withdraw our opinion of November 20, 1979, set aside our judgment and substitute this opinion.

K. A. T. Corporation, Richard V. Anderson, Marjorie H. Harrison, Omard R. Harrison and L. V. Anderson initiated suit against Truman C. Havins[1] to recover funds placed in escrow by Havins under a real estate contract, contending that Havins breached the contract and forfeited the escrow money by refusing to close the transaction. Havins responded with defensive pleadings of fraudulent representation and a cross-action alleging a violation of the Deceptive Trade Practice and Consumer Protection Act, Tex.Bus. & Com. Code Ann. § 17.41 *et seq.* (Vernon Supp. 1976–1977). Following a jury trial, the trial court entered judgment for Havins awarding him the escrow money and damages, attorneys' fees and costs. We affirm the judgment insofar as it denies the sellers recovery against Havins for breach of contract and reverse and render judgment in favor of the sellers on Havins' suit against them under the Deceptive Trade Practices and Consumer Protection Act, *supra.*

In December of 1975, the sellers were offering several tracts of farm land for sale through T. C. Stinson, a realtor. Havins was interested in purchasing several of the tracts and, on December 17, 1975, met with Stinson and L. V. Anderson, one of the sellers who was an officer of K. A. T. Corporation. After some discussion, Havins and Anderson signed the contract that forms the basis for this case. Thereafter, the other sellers signed the contract. Havins testified that he read a copy of the contract prior to signing it and became concerned over the absence of any provision granting to him the wheat crop then growing on the two tracts. He asked Stinson about the wheat crop and testified that Stinson looked at the contract and then went to Anderson, who was sitting on the other side of the room. Havins could not hear their conversation, but testified that Stinson then returned and said, "You get the rent off one place and all the crops off the other. You get the wheat."[2] Havins then signed the contract and deposited his escrow money with a third party who was acting as escrow agent. Stinson's recollection of the conversation was that Havins

---

1. For ease of reference, the plaintiffs, cross-defendants, appellants will be referred to collectively as "the sellers" except where specifically named. Defendant, cross-plaintiff, appellee, Truman C. Havins, will be referred to as "Havins."

2. One tract was being farmed by a tenant, a fact known to Havins. The sellers were farming the other tract.

asked if he got the crops, and Stinson in turn asked Anderson, "Does [sic] the crops go?" Anderson answered "yes" and Stinson then told Havins "yes, they did." Stinson, however, was uncertain whether the conversation took place before or after the contract was signed. Anderson testified that there was no discussion with Stinson or Havins concerning the crops or crop rent during this meeting. He said he discussed the matter with Stinson later and told him he was willing to give Havins "the rent," but that Havins could not have "the crop."[3]

Several weeks after the contract was signed, Havins testified he observed insects damaging the wheat crop. He asked Stinson if it would be agreeable for him to spray the insects. Stinson contacted Anderson and in turn advised Havins not to spray since he did not get the crops. Havins then indicated to Stinson and others that he did not intend to close the transaction if he did not get the crops.[4]

On the closing date, Anderson and Havins met and again there is a substantial variance in the testimony about what occurred. Havins testified he was ready to close in accordance with the contract terms, which called for cash payment in full, if he received the crops. He testified that Anderson informed him he had sold the land to someone else but would let Havins have it, along with the crops, if he would agree to buy it on an installment basis. Havins declined to do so. Anderson testified Havins appeared on the closing date and stated that he had backed out of the trade and was just there to get his earnest money. Anderson said he offered to close on a cash basis and give Havins the crops, but Havins informed him that he had turned his money back. Anderson testified he then offered to sell the land on an installment basis, but Havins refused the offer.

Stinson testified that Havins appeared and stated he would not close the trade because he did not get the crops. He further maintained that Anderson offered to let him have the crops if he would buy the land on an installment basis instead of a cash basis. The transaction was not closed, Havins' escrow money remained with the escrow agent and this litigation ensued.

The jury apparently found Havins' version of the events more credible and answered all but one special issue in his favor. The jury awarded Havins $1,750 damages and $2,500 attorneys' fees but did not assess exemplary damages against the sellers. The trial court trebled the damages and entered judgment in conformity with the verdict.

Before this court, sellers present seventeen points of error grouped into two basic arguments. This first eight points of error relate to the sellers' suit for recovery of the escrow funds, and the remaining nine points of error relate to Havins' Deceptive Trade Practice Act suit against the sellers. We will first determine the validity of the portion of the judgment which denies the sellers recovery of the escrow funds. We then will determine the validity of the portion of the judgment awarding Havins damages and attorneys' fees under the Deceptive Trade Practices and Consumer Protection Act, Tex.Bus. & Com. Code Ann. § 17.41 et seq. (Vernon Supp. 1976–1977).

I

*The Breach of Contract Suit*

The sellers' eight points of error attacking the portion of the judgment denying recovery on its cause of action for repudiation of the contract by Havins require the resolution of two questions: (1) whether the

---

3. In the context in which the witnesses used the terms, "rent" apparently means the portion of the crop customarily given by the tenant to the landlord as payment for the lease of the property, while "crop" apparently means the entire growing crop.

4. The witnesses are less than precise in their terminology, but a fair reading of all of the

testimony indicates that Havins wanted the entire crop on the tract being farmed by the sellers and the landlord's share of the crop on the tract being farmed by the tenant. Anderson seems to be saying that initially he was willing to give Havins a landlord's share on each tract.

sellers established as a matter of law that Havins repudiated the contract, thus rendering immaterial contrary jury findings on the question; and (2) whether Havins' affirmative defense of fraudulent representation was properly pleaded and proved. We answer the first question in the negative and the second in the affirmative.

Two special issues were submitted relative to the sellers' claim that Havins repudiated the contract. He first inquired whether Havins made a positive, unequivocal and unconditional statement to Anderson that he would not perform his obligations under the contract. The second special issue inquired whether the sellers were willing and able to perform all of their contractual obligations under the contract. The jury answered each issue in the negative.

■ In order to prevail in the trial court under the theory on which the case was tried,. the sellers were required to either establish the facts inquired about as a matter of law or obtain an affirmative finding from the jury on those issues. In this court, they contend the facts were established as a matter of law.[5]

We have reviewed the evidence carefully and have concluded the facts in question were not established as a matter of law. It is, of course, undisputed that Havins did not close the transaction in accordance with the contract. It is also undisputed that Havins wanted the crops and crop rental on the land and he indicated prior to the closing date he expected to receive them. Anderson testified he was ready to close the transaction for cash and the crop rents would go with the land. He said he told Havins he could have the crops if he would buy the land, and he sold the land to another buyer only after Havins refused to close

the trade. This testimony was controverted by Havins. He testified he appeared at the proper time and place for closing with the purchase money and was informed by Anderson that the land had been sold to someone else. Havins further testified Anderson told him he could have the crops, if he would buy the land on an installment basis instead of a cash basis.

■ The testimony of Anderson was from an interested witness and is contradicted. Thus, Anderson's testimony did no more than raise fact issues, *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41, 47 (Tex.1965), and forbids the conclusions as a matter of law that Havins "made to L. V. Anderson a positive, unequivocal and unconditional statement" that he would not perform under the contract and the sellers were "willing and able to perform all of their contractual obligations" under the contract. The jury chose not to find the foregoing facts on the basis of the evidence heard, and we cannot disturb their findings.

The sellers next attack the pleadings, proof and findings supporting Havins' affirmative defense of fraudulent representation. The elements of fraudulent representation pertinent to this case are as follows: (1) a material representation was made; (2) the representation was false; (3) the representation was known by the maker to be false when made, or made recklessly without any knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the persons to whom it was directed would act upon it; (5) the person to whom it was directed did act in reliance upon it; and (6) thereby suffered injury. *Custom Leasing,*

---

**5.** The sellers also contend there is no evidence to support the "No" answer. Since the sellers had the burden of obtaining a "Yes" answer, evidence is not required to support a "No" answer. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966). A "No" answer simply means that a jury does not find the fact in question by a preponderance of the evidence. In order to successfully attack an adverse finding of fact on an issue where the appellant has the burden of proof, the appellant

must bring forward points of error demonstrating that the ultimate fact (1) was established conclusively or as a matter of law or (2) that the failure of the factfinder to find the fact is so against the great weight and overwhelming preponderance of the evidence as to be unjust. *Smith v. Safeway Stores, Inc.*, 433 S.W.2d 217, 219 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). The sellers do not bring forward the latter point.

*Inc. v. Texas Bank & T. Co. Of Dallas,* 516 S.W.2d 138, 143 (Tex.1974).

■ Havins' pleadings of fraudulent representation are broad and general and contain various legal conclusions. They are sufficient, however, absent special exceptions not present in the record before us, to plead and give adequate notice of the defense and to support the submission of special issues. *Neuhaus v. Kain,* 557 S.W.2d 125, 133 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.). Each of the foregoing elements is stated in the pleadings either in express terms or by necessary implication.

■ The special issues submitted inquired about elements (1), (2), (4) and (5) set out above. All were answered favorably for Havins and are attacked by the sellers as having no support in the evidence. In reviewing the sellers' points, we are required to consider only the evidence and inferences tending to support the finding under attack and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ Our review of the evidence reveals testimony from Havins, supported in several respects by testimony from Stinson, that it was important to Havins to receive the crop and crop rental, and representations that he would receive them were made to him by Anderson and Stinson. He stated he did not sign the contract until he was assured he would receive them. Havins further testified he placed $7,850 in escrow when he signed the contract and after the contract was signed, he was told by Anderson, speaking through Stinson, that he could not have the crops. Anderson denied any discussion concerning crops took place when the contract was signed. He testified he intended only the crop rentals, and not the entire crop, to go with any sale of the land.

The foregoing testimony is some evidence of a false representation that was material, made for the purpose of inducing Havins to enter the contract and relied on by Havins. We, therefore, cannot say there is no evidence to support these answers.

■ There were no jury findings on element three (3) concerning knowledge of the maker that the representation was false, and element six (6) which deals with injury. However, when fact findings are made on part but not all of the elements of a cause of action or defense, and there is evidence to support fact findings on the remaining elements, the trial court will be deemed to have found the remaining elements. *Wilson v. Remmel Cattle Co., Inc.,* 542 S.W.2d 938, 942 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.); Tex.R.Civ.P. 279.

■ Havins testified he wanted the crops and was told by Anderson, before signing the contract, that he would receive them. Anderson testified he did not intend for Havins to receive the crops. Havins was denied the crops the jury found he was promised and, as a consequence thereof, the consummation of the contract. Thus, the evidence is sufficient to support the trial court's implied findings of knowledge and injury.

■ The sellers also contend the evidence admitted on the fraudulent representation defense is in derogation of the terms of the contract, and its receipt was violative of the parol evidence rule. Fraud is, however, one of the classic exceptions to the parol evidence rule. *Albers v. Schumacher Company,* 314 S.W.2d 852, 854–55 (Tex.Civ. App.—Waco 1958, no writ). Thus having pleaded fraud, Havins was entitled to prove it in avoidance of the contract.

■ The final contention advanced by the sellers is that, as a matter of law, there could not have been a false representation made by them. They contend that, because the contract did not specifically reserve the unsevered crops to the seller, they passed to the buyer upon closing as a matter of law.

This state has long recognized the principle that growing unsevered crops belonging to the seller pass to the buyer when title to the realty is transferred, unless the parties agree to the contrary. *Willis v. Moore,* 59 Tex. 628 (1883); *see Gulf Stream Realty Co.*

*v. Monte Alto Citrus Ass'n*, 253 S.W.2d 933 (Tex.Civ.App.—San Antonio 1952, writ ref'd). However, the rule is based, at least partially, upon the assumption that the buyer takes possession of the property when he acquires title to it. When the date of possession differs from the date of acquisition of title, the cases dealing with rents and profits from the realty have fixed the date of possession as the time when the buyer's right to the rents and profits commences, absent a contrary agreement. *State v. Myers*, 280 S.W.2d 327, 330 (Tex.Civ.App.—San Antonio 1955, writ ref'd n. r. e.); *see Rives v. James*, 3 S.W.2d 932 (Tex.Civ.App.—San Antonio 1928, writ dism'd). *See also* 7 S. Williston, Contracts, § 937 (3d ed. 1963).

In this case, the contract provided for a closing date no later than February 15, 1976. However, it also contained the following provision on possession of the land:

> 5. *POSSESSION* : It is hereby agreed between the parties hereto, that the buyer is to have immediate possession of the above described lands as soon as the 1975 wheat crop has been harvested.

The 1975 wheat crop was not ready for harvest until the spring of 1976, several months after the closing date.

We hold that reservation of possession by the sellers until after harvest was a reservation of the growing crops and that the crops would not have passed as a matter of law to Havins upon the closing of the transaction. We realize that *Rives v. James, supra,* and *State v. Myers, supra,* were cases where the buyer went into possession prior to the acquisition of title. There are even more compelling reasons, however, for using the date of possession to determine the

right to growing crops in this case. If we hold that on February 15, 1976, the closing date, the contract gave Havins ownership of the crops, then he found himself in the intolerable position of owning a wheat crop he could neither care for nor harvest, since he was not entitled to possession of the land until after the harvest. Conversely, the sellers retained possession of a wheat crop they did not own.

We, therefore, overrule sellers' eight points of error brought forward on their suit against Havins for repudiation of the contract. The portion of the judgment denying the sellers recovery against Havins for breach of contract must be affirmed.

## II

### *The Deceptive Trade Practice Act Suit*

■ The second phase of this case concerns Havins' successful cross-action against the sellers for a violation of the Deceptive Trade Practices and Consumer Protection Act, Tex.Bus. & Com. Code Ann. § 17.41 *et seq.* (Vernon Supp. 1976–1977). The sellers attack by nine points of error the adverse judgment awarding Havins $5,250 in damages and $2,500 in attorneys' fees. Our disposition of this problem requires the resolution of two questions: (1) whether the real estate transaction that forms the foundation of this case comes within the Deceptive Trade Practice Act; and (2), if so, whether Havins properly plead and proved his cause of action. We answer the first question in the affirmative; the second question in the negative.

The statutory provisions pertinent to this case [6] were enacted by the 63rd legislature

**6.** § 17.45. Definitions

As used in this subchapter:

(1) "Goods" means tangible chattels or real property purchased or leased for use.

\* \* \* \* \* \*

(3) "Person" means an individual, partnership, corporation, association, or other group, however organized.

(4) "Consumer" means an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services.

\* \* \* \* \* \*

(6) "Trade" and "commerce" means the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly and indirectly affecting the people of this state.

\* \* \* \* \* \*

§ 17.46. Deceptive Trade Practices Unlawful

in 1973 and have been amended by each legislature since passage. Initially, there was considerable doubt as to whether a cause of action existed under section 17.50 when the alleged deceptive trade practice involved the purchase of realty. As originally enacted, section 17.45 defined "goods" as "tangible chattels bought for use"; "services" as "work, labor, and services for other than commercial or business use, including services furnished in connection with the sale or repair of goods"; and "consumer" as "an individual who seeks or acquires by purchase or lease, any goods or services." In *Cape Conroe Limited v. Specht*, 525 S.W.2d 215 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ), the court held the purchaser of two lots in the Cape Conroe Subdivision, who sued as a purchaser of realty, was not a "consumer" entitled to maintain an action under section 17.50. The court reasoned the "consumer" referred to in section 17.50 is, by the terms of section 17.45(4), the purchaser of "goods" and "services" and that "goods" and "services," as defined by sections 17.45(1) and (2) do not include purchasers of realty. *Cape Conroe Limited v. Specht, supra*, at 219.

The 1975 legislature, by amendment effective September 1, 1975, added to section 17.45(1) the present terminology which includes real property in the definition of "goods." That amendment and the Supreme Court decision in *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977), provide the guidelines for our decision in this case. In *Woods v. Littleton, supra*, which involved the purchase of both realty and services, the

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
(b) The term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:
\* \* \* \* \* \*
(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;
\* \* \* \* \* \*
§ 17.50. Relief for Consumers
(a) A consumer may maintain an action if he has been adversely affected by any of the following:

Supreme Court specifically disapproved the portion of *Cape Conroe Limited v. Specht, supra*, that denied protection under section 17.50 to a purchaser of realty. The Supreme Court decided the case on the basis of the Deceptive Trade Practice Act as it existed in 1973, and stated that "the Act as originally enacted clearly declares deceptive practices in the conduct of a real estate sale to be unlawful." *Woods v. Littleton, supra*, at 667. The Court also noted "[a]s amended effective September 1, 1975, 'consumers' clearly includes purchasers of real estate. Sections 17.45(1) and (4)." *Woods v. Littleton, supra*, note 9, at 667.

There can be no doubt, therefore, that the 1975 version of the Act, and its present version, apply to real estate transactions. Specifically, section 17.50 provides that a consumer, as defined in section 17.45, may maintain an action under section 17.46 if he has been adversely affected by any of the false, misleading or deceptive acts or practices declared unlawful in that section. One of those acts or practices is a representation that an agreement confers or involves rights which it does not have. The definition of consumer includes an individual who seeks any goods, and the definition of goods includes real property purchased for use. In this case, Havins is a consumer who sought goods he desired to purchase for use, and he contends the sellers represented the purchase agreement conferred or involved rights it did not have. The transaction in question is clearly covered by the Act.

(1) the use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter;
\* \* \* \* \* \*
(b) In a suit filed under this section, each consumer who prevails may obtain:
(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended;
Deceptive Trade Practices and Consumer Protection Act, Tex.Bus. & Com. Code Ann. §§ 17.45, .46, .50 (Vernon Supp. 1976–1977).

The sellers contend the Act cannot apply to the transaction because the definition of "goods" in section 17.45(1) is limited to "tangible chattels or real property *purchased* or leased for use" (emphasis added). They contend this was an executory contract that was never completed and, therefore, Havins had not actually purchased the real property but had merely contracted to purchase it. There are, however, two problems with sellers' contention. First, under section 17.45(4) a consumer includes an individual who seeks any goods. Secondly, under section 17.45(6), the "trade" and "commerce" that is the focal point of the deceptive practices defined under section 17.46 includes the advertising or offering for sale of any real property. *See Woods v. Littleton, supra,* at 668. Although a literal and isolated reading of section 17.45(1) lends support to the sellers' argument, it is obvious from a reading of the Act as a whole that the real estate purchase need not be completed in order for the Act to apply.

The sellers also contend the Act is inapplicable because the crops passed to Havins as a matter of law under the contract; thus, there could have been no representation that the agreement conferred rights it did not have. We have disposed of the argument by holding the reservation of possession by the sellers under the contract was a reservation of the crops. Thus, the alleged representation "the crops go" was a representation that the agreement conferred rights it did not have and, as such, is actionable under the Act. *See Royal Globe Ins. Co. v. Bar Consultants,* 577 S.W.2d 688, 694 (Tex.1979); *Leal v. Furniture Barn, Inc.,* 571 S.W.2d 864, 865 (Tex.1978).

Having decided Havins had a cause of action under the Deceptive Trade Practice Act, we must now determine whether he properly plead and proved his cause of action. After reviewing his pleadings, we are satisfied that they suffice. In his cross-action pleadings, Havins set out the events surrounding the transaction and the various representations alleged to be false. He specifically plead he was relying on section 17.-50(a), section 17.46(b)(12) and section 17.-50(b)(1). We find no special exceptions to the pleadings in the record. The pleadings give ample notice of the facts and legal theories upon which Havins relies, and any greater specificity was waived by failure to except. *See Allen v. Parsons,* 555 S.W.2d 522, 525 (Tex.Civ.App.—Texarkana 1977, writ dism'd).

The final inquiry is whether the evidence properly supports the jury's answers to the issues submitted in connection with the action under the Deceptive Trade Practice Act. The jury found that Anderson engaged in a deceptive trade practice as defined in the charge; $1,750 would reasonably compensate Havins for his damage resulting from the deceptive trade practice; and $2,500 would reasonably compensate Havins for attorneys' fees.

The sellers attack the legal and factual sufficiency of the evidence to support the above jury findings by "no evidence" and "insufficient evidence" points of error. In considering this problem area, we are guided by well settled rules of appellate review. The "no evidence" point presents a question of law requiring the appellate court to consider only the evidence and inferences tending to support the finding under attack and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

The "insufficiency" point, on the other hand, invokes a broader standard. It requires this court to consider all of the evidence in order to determine whether the evidence supporting the findings is so weak, or the evidence to the contrary so overwhelming, that the finding should be set aside and a new trial ordered. *Garza v. Alviar, supra.* In considering an "insufficiency" point, however, we are particularly cognizant of the role of the trier of fact. The trier of fact, in this case the jury, had the opportunity to observe the demeanor of the witnesses on the stand and to judge their credibility. Its function is to determine the weight to be given their testimony and to resolve conflicts in the testimony of one witness with another. It can believe all of a witness' testimony, none of it or part of

it while disregarding other portions. Within this framework, the findings of fact made by the jury will be sustained if there is some evidence of probative value to support them, and if they are not against the great weight and preponderance of the evidence. Even if the appellate court would have found facts contrary to those found by the jury after reviewing the evidence, it cannot substitute its judgment for that of the fact finder, if the findings meet the evidentiary test stated above. *Loeb, Rhoades & Co. v. Stanley*, 541 S.W.2d 869, 872 (Tex.Civ.App.—Corpus Christi 1976, no writ).

■ Evidence discussed in detail in the foregoing portions of this opinion provides ample support for the finding of a deceptive trade practice. The sellers' "no evidence" and "sufficiency" points of error attacking that finding are, consequently, overruled.

■ The final issue we must determine is whether the damages and attorneys' fees awarded to Havins can remain intact. The following is a summary of the testimony concerning damages and attorneys' fees. Havins testified in response to questioning by the sellers' attorney that he had suffered no monetary damages. Later, during direct examination by his own counsel, Havins listed some obviously noncompensable damages, and then stated: "I haven't had the use of the money for over two years; I've had to pay nine percent interest on the money."

The testimony on attorneys' fees for Havins came from an attorney called as a witness by the sellers. During cross examination by Havins' attorney, he agreed $2,500 would be a fair and reasonable attorneys' fee for the case. He also agreed the attorneys' fees would be approximately the same for both sides.

The foregoing testimony is the only evidence in the record that supports either the $1,750 in damages or the $2,500 in attorneys' fees awarded by the jury. Application of the test detailed above compels the conclusion that there is no evidence to support the damage award of $1,750. We note,

initially, that the $1,750 award is in excess of the amount arrived at by applying the nine percent interest figure to the $7,850 placed in escrow, calculated from the date the money was deposited with the escrow agent to the date of the jury verdict. If that were the only problem, the evidence would simply be insufficient, and this portion of the suit could be remanded for new trial. *See, e. g., McCoy v. Polvado*, 583 S.W.2d 439, 441 (Tex.Civ.App.—Amarillo 1979, no writ). There is, however, an underlying problem which compels the conclusion that there is no evidence of damages. As set out above, the only evidence received in support of Havins' claim for compensable damages was his testimony that he had been deprived of the use of the money for over two years and had paid nine percent interest on the money. The written contract in question neither makes a provision for interest, nor is it a contract "ascertaining the sum payable" within the meaning of article 5069–1.03 of the Texas Revised Civil Statutes Annotated, as amended in 1979. Therefore, if Havins is to recover interest on the escrow money as damages, it can only be through the equitable doctrine which permits such recovery because the money is improperly used or detained by the sellers. *See Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 483, 485 (Tex.1978).

■ There is no evidence, however, that the sellers used or denied the escrow money. The money was initially placed in the hands of a neutral third party escrow agent by Havins. When the sellers' suit against Havins was initiated, the escrow agent tendered the money into the registry of the court where, presumably, it remains. The money was never in the hands, or under the control of the sellers. There is nothing·in the record to indicate the sellers instructed the escrow agent to do anything with the money. Nor is there any evidence Havins made a demand for the money upon either the sellers or the escrow agent, prior to suit. Of course, the sellers instituted their action against Havins for the purpose of establishing their right to the money, but the very act of filing suit is recognition by the sellers

that they had no control over the escrow money and never would unless they prevailed in their suit. The sellers did not use or detain the escrow money and, thus, cannot be assessed interest as damages for its detention. Under the record in this case, the only evidence of damages relates to an item not recoverable; thus, there is no evidence to support the award of damages.

The disposition of the damage question also compels the elimination of the award for attorneys' fees. As stated in *Cantrell v. First Nat. Bank of Euless*, 560 S.W.2d 721, 727 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.):

> To be remembered is that Cantrell, not having established right to recover damages by the provisions of § 17.50 of the Business and Commerce Code, would not be entitled to any attorney's fees. The Bank, not being obligated to pay damages to Cantrell, would be under no obligation to pay him any attorney's fees under the Deceptive Trade Practices—Consumer Protection Act, § 17.41, et seq., of the Business and Commerce Code.

Similarly, in this case, Havins' failure to present any evidence of compensable damages precludes his recovery of attorneys' fees.

The sellers' points of error numbers 10, 11 and 15, insofar as they pertain to the award of damages and attorneys' fees, and the corresponding points in their motion for rehearing, are sustained for the reasons set out above. Sellers' remaining points of error and the remaining points in their motion for rehearing are overruled. Since there is no suggestion in the record that the available evidence on damages was not fully developed, the judgment awarding Havins' recovery on his cross-action must be reversed and judgment rendered that Havins take nothing.

Accordingly, the portion of the judgment which denies the sellers' recovery against Havins for breach of contract is affirmed. The portion of the judgment which decrees Havins' recovery on his cross-action is reversed and judgment is rendered that Havins take nothing on his cross-action. Costs

are assessed equally between appellants and appellee.