The UNION BANK OF BENTON, ARKANSAS, Plaintiff-Appellant,

v.

The FIRST NATIONAL BANK IN MOUNT PLEASANT, TEXAS, Defendant-Appellee.

No. 81–2056.

United States Court of Appeals, Fifth Circuit.

June 9, 1982.

Boswell & Smith, P. A., Ted Boswell, David E. Smith, Bryant, Ark., for plaintiff-appellant.

Atchley, Russell, Waldrop & Hlavinka, Robert W. Weber, Texarkana, Tex., for defendant-appellee.

Before WISDOM, SAM D. JOHNSON and WILLIAMS, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

This Court is again asked to allocate losses sustained by banks victimized in a check kiting scheme. On the first appeal, this Court reversed the district court and held the First National Bank in Mount Pleasant, Texas (Mount Pleasant), liable for failure to timely return twenty-four checks received from the Union Bank of Benton, Arkansas. *Union Bank of Benton, Arkansas v. First National Bank in Mount Pleasant, Texas (Union Bank I)*, 621 F.2d 790 (5th Cir. 1980). The case was remanded to the district court "... for the consideration and award of interest, if found appropriate."[1] While granting Union Bank postjudgment interest of nine percent per annum on the damage award of $58,077, the district court upon remand denied prejudgment interest. The Union Bank of Benton, Arkansas (Benton), appeals the denial of prejudgment interest.

The facts are succinctly recited in Part I of this Court's prior opinion, 621 F.2d at 791:

In the fall of 1975, Bob Barr of Atlanta, Texas, Freddie Newcomb of Benton, Arkansas, and Kenneth Williams of Mt. Pleasant, Texas, structured a documentary draft kiting scheme based on the auto auction business. Under the plan, Barr would draw drafts on Newcomb's account at Union Bank of Benton, Arkansas

("Benton"). Newcomb would then draw drafts on Williams' account at First National Bank in Mt. Pleasant, Texas ("Mt. Pleasant"). Ostensibly, these drafts were to cover the purchases of automobiles, first by Newcomb from Barr, and then by Williams from Newcomb. Bogus documents of title covering non-existent vehicles were sent along with the drafts. As relates to the drafts before us, no cars were sold or intended to be sold. The only thing to be "purchased" was time; time for Barr's actual sale of vehicles to generate funds for Williams' use in covering the drafts at Mt. Pleasant.

As part of the camouflage, the phoney drafts were mixed in with genuine instruments. Believing all drafts submitted were valid, Benton "honored" them immediately, thus extending credit in that amount to Newcomb. When the scheme was uncovered, each bank, relying on different BCC provisions, sought to shift responsibility for the loss to the other. Finding that Mt. Pleasant had performed as required by the BCC, the district court assigned the total financial loss to Benton.

The focal point of this dispute is that piece of the scenario in which Newcomb drew drafts on Williams' account at Mt. Pleasant. During the early stages of the scheme, Mt. Pleasant presented the drafts to Williams who paid them with funds supplied by Barr. Mt. Pleasant then transmitted the funds to Benton which, having already credited Newcomb's account with the drafts, retained the proceeds.

By December, 1975, the financial house of cards began to tumble. Barr was unable to deliver the funds Williams needed to cover drafts that were accumulating at Mt. Pleasant. Following established pat-

---

[1] The opinion of the Fifth Circuit recites, in pertinent part:

The judgment of the district court as it relates to the two drafts received by Mt. Pleasant on January 12, 1976, is AFFIRMED. The judgment of the district court as it relates to the 24 drafts received by Mt. Pleasant between December 15, 1975 and January 5, 1976 is REVERSED and Benton is to have

judgment against Mt. Pleasant with respect thereto. The matter is REMANDED for determination of application or apportionment or other proper disposition of the collateral security held by Benton and for the consideration and award of interest, if found appropriate.
621 F.2d at 796.

tern and practice, Benton continued to sent Mt. Pleasant documentary drafts on Williams' account. Twenty-four drafts, totaling $70,175 were received by Mt. Pleasant between December 15, 1975 and January 5, 1976. Accompanying each draft was a "collection letter" containing these instructions: (1) pay at par, (2) do not protest or wire nonpayment unless otherwise instructed, (3) do not hold for convenience of drawee unless otherwise instructed, (4) deliver documents attached only on payment of draft. The directive "pay or return within 24 hours" was stamped on the collection letters and on some of the drafts.

These 24 drafts were returned to Benton, as one unit, on January 7, 1976. Attached to the unpaid drafts was an unsigned notation stating "cannot pay salvage titles."

On January 10, 1976, prior to receipt of this bundle, Benton forwarded two more drafts to Mt. Pleasant. These instruments were mailed with collection letters identical to those sent with earlier drafts. On January 12, 1976, the day these drafts arrived, Mt. Pleasant returned them with a typewritten note stating, "returned unpaid—Customer cannot pay. Thanks, Marguerite Foster."

In honoring the 26 drafts, Benton extended $74,375 in credit to Newcomb. Benton mitigated its losses by liquidating $9,298 of collateral pledged by Newcomb.

It was on July 18, 1980, that the Fifth Circuit reversed the district court and remanded the case to the district court for entry of judgment against Mount Pleasant.

On January 16, 1981, some five years after Mount Pleasant's wrongful return of the checks, the district court entered judgment for Benton in the sum of $58,077,[2] plus postjudgment interest from July 18, 1980. The district court, however, declined to award prejudgment interest—thus this appeal.

### I. Award of Pre-Judgment Interest

■■ Benton asserts that, under Texas law, it has a right to prejudgment interest on the payments wrongfully withheld.[3] Benton cites the well-settled rule in Texas that interest is recoverable as a matter of right from the date of the injury or loss, where damages are established as of a definite time and the amount thereof is definitely ascertainable.[4] *Colonial Refrigerated Transportation, Inc. v. Mitchell, supra; Black Lake Pipe Line Co. v. Union Construction Co., Inc.,* 538 S.W.2d 80, 95–96 (Tex.1976); *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11 (1897); *City of Ingleside v. Stewart,* 554 S.W.2d 939, 946–47 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r. e.); *McDaniel v. Tucker,* 520 S.W.2d 543, 549 (Tex.Civ.App.—Corpus Christi 1975, no writ). Failure to pay an amount due at a specified time is clearly a definitely ascertainable loss. *Republic National Bank v. Northwest National Bank,* 578 S.W.2d 109 (Tex.1978); *Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480 (Tex.1978); *Davidson v. Clearman,* 391 S.W.2d 48, 51 (Tex.1965).

■ In the instant case, Benton sent Mount Pleasant twenty-four checks between December 15, 1975 and January 5, 1976, with the explicit directive "Pay or return within twenty-four hours."[5] This

---

**2.** The total damages were reduced to reflect Benton's liquidation of collateral pledged by Newcomb.

**3.** In a diversity case such as this one, state law controls whether the recovery of interest prior to the date of judgment is a mandatory element of damages. *Colonial Refrigerated Transportation, Inc. v. Mitchell,* 403 F.2d 541 (5th Cir. 1968); *Mid-States Oil Corp. v. Waller,* 207 F.2d 127, 131 (5th Cir. 1953); *New Amsterdam Gas Co. v. Soileau,* 167 F.2d 767 (5th Cir. 1948); *City of Texarkana v. Arkansas-Louisiana Gas Co.,* 118 F.2d 289 (5th Cir. 1940). Texas law is applicable because the wrongful dishonor occurred in Texas.

**4.** Damages must be ascertainable at a particular time in order to preclude liability when a defendant cannot reasonably be expected to determine the amount owed and pay it to stop the running of prejudgment interest. *Indust-Ri-Chem Laboratory, Inc. v. Par-Pak, Inc.,* 602 S.W.2d 282, 294 (Tex.Civ.App.—Dallas 1980, no writ).

**5.** Because these checks were accompanied by automobile documents of title deliverable against honor of the drafts, they were documentary drafts. Tex.Bus. & Com.Code § 4.104(a)(6). *See Union Bank,* 621 F.2d at 790.

Court, in an earlier decision, determined that Mount Pleasant's failure to comply with these instructions was a violation of Tex.Bus. & Com.Code § 4.302.[6] *Union Bank I*, 621 F.2d at 796. The loss had become definitely ascertainable before Mount Pleasant returned the twenty-four checks to Benton on January 7, 1976; the loss was definitely ascertainable on January 6, 1976, when Mount Pleasant exceeded the twenty-four hour maximum time allowed for payment or return. Accordingly, Benton has a right to prejudgment interest as a matter of law.

The district court misreads the controlling law in its denial of prejudgment interest. According to the district court, Benton's claim is governed by *Black Lake, supra.* *Black Lake* involved a pipeline company which refused to pay a subcontractor for performing extra work not specifically covered by the contract. The Texas Supreme Court not only authorized recovery in *quantum meruit* for this extra work, but also allowed prejudgment interest on the amount recovered. In so doing, that court extended to *quantum meruit* recoveries the general rule that prejudgment interest is recoverable as a matter of right when the time and amount of damages are definitely ascertainable. *Black Lake*, 538 S.W.2d at 96. *See also Stahl*, 569 S.W.2d at 485. In the case *sub judice*, the district court apparently misconstrued the holding in *Black Lake* to *limit* prejudgment interest to situations where the defendant is unjustly enriched. The district court, therefore, determined that Benton did not qualify for recovery, based on its finding that Mount Pleasant never benefitted unjustly from money or services provided by Benton.

■ The district court failed to recognize that Texas law allows an award of prejudgment interest not only as restitution for unjust enrichment, but also as compensation for damages sustained. Recovery on equitable grounds is not an exclusive remedy; it is concurrent with the common-law right to prejudgment interest for ascertainable damages.[7] *City of Texarkana*, 118

---

6. Section 4.302 recites, in pertinent part:

> In the absence of a valid defense ... if an item is presented on and received by a payor bank the bank is accountable for the amount of
>
> > (1) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it, or regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or
> >
> > (2) any other properly payable item unless *within the time allowed for acceptance* or payment of that item the bank either accepts or pays the item or returns it and accompanying documents.
>
> (emphasis added).

In *Union Bank I*, this Court determined that Benton's instruction to "pay or return within 24 hours," constituted the maximum "time allowed" under § 4.302(2) for payment or return of each check. *See Union Bank I*, 621 F.2d at 792–96 for a detailed explanation of the Court's reasoning.

7. In its memorandum opinion, the district court misspoke in reciting that Texas law allows recovery of prejudgment interest only in three classes of cases:

> (1) suits based on a contract where a specific rate of interest is provided for in the contract;
>
> (2) suits based upon a written contract or upon an account where no rate of interest is expressly provided; and
>
> (3) suits for damages on a theory of wrongful use or detention of money.

The first two classes apply to interest when awarded *eo nomine* ("in its own name"). Interest is allowed "in its own name," even if not specifically pleaded as damages, if provided for by contract or statute. *Stahl*, 569 S.W.2d at 486; *Watkins v. Junker; Heidenheimer v. Ellis*, 67 Tex. 426, 3 S.W. 666 (1887). If a contract clearly specifies the amount of prejudgment interest due at breach, the *eo nomine* rule can be invoked. If a contract is breached where no specified rate of interest is agreed upon by the parties from the time it is due and payable, Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp.1981) provides a specific legal interest rate to be awarded. The third class of cases refers here to the equitable exception to the *eo nomine* rule. Prejudgment interest may, in the discretion of the court, be awarded when no specific contractual or statutory provision is present, if one party has been unjustly enriched by the use or detention of another's money. *Stahl*, 569 S.W.2d at 485.

Interest as *damages* is awarded as a matter of right, however, independently of whether a suit comes within the scope of the *eo nomine* rule or its equitable exception. *City of Texarkana*, 118 F.2d at 294. As long as damages are

F.2d at 294. *See also* Dobbs, *Remedies* § 3.5 at 164 (1973). The equitable grounds for restitution actually broadens, rather than limits, the scope of recovery for prejudgment interest.[8]

Even if not unjustly enriched, Mount Pleasant violated its statutory duty under Tex.Bus. & Com.Code § 4.302 by wrongfully retaining the twenty-four checks. The district court stated, however, that "by no stretch of the imagination can this breach of statutory duty be characterized as a wrongful detention" of Benton's money. Texas courts have established, however, that a breach of a statutory duty is sufficient to invoke the common-law rule allowing interest as damages. *City of Galveston v. Russo*, 508 S.W.2d 882 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.); *Hayek v. Western Steel Co.*, 469 S.W.2d 206, 215–16 (Tex.Civ.App.—Corpus Christi 1971), aff'd, 478 S.W.2d 786 (Tex.1972).[9]

II. *Determination of Amount to Be Awarded*

 On remand, the district court must determine the rate of interest and the date of loss from which prejudgment interest is to be computed. Although Benton's pleadings failed to specify a prejudgment interest rate, it requested six percent prejudgment interest in its brief on appeal. During oral argument Benton suggested that the rate be left to the discretion of the district court. Benton did plead, however, that interest be computed from January 6, 1976.

During the time frame between December 15, 1975 and January 5, 1976—when Mount Pleasant failed to timely return the twenty-four checks—a prejudgment interest rate of six percent per annum was specified by statute on all written contracts and open accounts. Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1971).[10] Many Texas courts have found this statutory rate applicable by analogy to awards of interest as damages. *See Davidson v. Clearman, supra; Southline Equipment v. National Marine Service, Inc.*, 598 S.W.2d 340, 344 (Tex. Civ.App.—Houston [14th Dist.] 1980); *Pecos County State Bank v. El Paso Livestock Auction Co., Inc.*, 586 S.W.2d 183 (Tex.Civ. App.—El Paso 1979, writ ref'd n.r.e.);

---

definitely ascertainable at a particular time, prejudgment interest is to be awarded, whether or not a contractual relationship exists. *See also Republic National Bank of Dallas*, 578 S.W.2d at 116–17.

**8.** Benton would be limited to a restitution claim only if Benton had failed to specifically pray for interest as damages. In order to bring a common-law action for prejudgment interest as damages, a plaintiff must set forth in pleadings both a prayer for interest and the time at which the damages were definitely established. *Miles v. Royal Indemnity Co.*, 589 S.W.2d 725 (Tex. Civ.App.—Corpus Christi 1979, writ ref'd n.r. e.); *Booker Custom Packing Co., Inc. v. Caravan Refrigerated Cargo, Inc.*, 575 S.W.2d 329 (Tex.Civ.App.—Dallas 1978, no writ). A prayer, however, need only include the term "with interest" along with the date specified to qualify as an appropriate pleading. *Black Lake*, 538 S.W.2d at 96; *Texas & N.O.R. Co. v. Dingfelder & Balish*, 134 Tex. 156, 133 S.W.2d 967, 968 (1938, opinion adopted). In its amended complaint, Benton specifically pleaded for damages "with interest thereon from January 6, 1976." That was sufficient to place Mount Pleasant on notice of Benton's claim.

**9.** Mount Pleasant cites *Anderson v. Havins*, 595 S.W.2d 147 (Tex.Civ.App.—Amarillo 1980, no writ) as a case where prejudgment interest was not awarded, even though damages were ascertainable. *Anderson* involved a dispute between a vendor and purchaser over escrow money when the purchaser refused to close a real estate transaction. The court in *Anderson* determined that if the purchaser had controlled the escrow account, an award of prejudgment interest would have been in order. Because the money was held by a neutral third party not under the purchaser's control, an award of prejudgment interest was not sustained. That case is not controlling; it does not pertain to what is before the court in the instant case—a statutory violation.

**10.** Art. 5069–1.03 as enacted in 1967, recites in pertinent part:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made.

As amended in 1975, the statutory rate of postjudgment interest was increased to 9% per annum. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Vernon Supp.1981).

*Booker Custom Packing Co.*, 575 S.W.2d at 331.

Several Texas appellate courts have explicitly stated that an award of prejudgment interest above the statutory rate is within the court's equitable discretion, even where the cause of action is based on a contract. At least two appellate courts have allowed nine percent prejudgment interest on breach of contract awards, even though the statutory rate in effect was only six percent.[11] *Earl Hayes Rents Cars & Trucks v. City of Houston*, 557 S.W.2d 316 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *Haag v. Pugh*, 545 S.W.2d 22 (Tex.Civ.App.—Eastland 1976, no writ). Recently, one appellate court allowed a ten percent prejudgment interest rate on a damages award for negligent mismanagement of properties held in trust. *First City National Bank of Paris v. Haynes*, 614 S.W.2d 605, 610 (Tex.Civ.App.—Texarkana 1981, no writ). The court in *Larcon Petroleum, Inc. v. Autotronic Systems*, 576 S.W.2d 873 (Tex.Civ.App.—Houston [14 Dist.] 1979, no writ), affirmed the trial court's award of six percent prejudgment interest in a contract case, but recognized that article 5069–1.03 merely permitted, not required, the six percent rate. 576 S.W.2d at 879.

Although the Texas Supreme Court has not expressly declared that prejudgment interest awards above the statutory rate are within the discretion of the trial judge, it has implicitly sanctioned this approach. In *Maxey v. Texas Commerce Bank of Lubbock*, 580 S.W.2d 340, 341 (Tex.1979), that court expressly declined to express any opinion on the correctness of the Court of Civil Appeals' holding that prejudgment interest for a breach of contract occurring in 1966 was limited to a six percent rate. Furthermore, that court in *Allstate Insurance Co. v. Chance*, 590 S.W.2d 703, 704 (Tex. 1979), permitted a nine percent rate to stand on an award to an insured who sued to recover for a fire loss, even though the applicable statutory rate for prejudgment interest was only six percent. As a result, the Fifth Circuit has determined that any interest rate, in excess of that statutorily applicable, is within the trial court's discretion. *Dallas-Fort Worth Regional Airport Board v. Combustion Equipment Associates*, 623 F.2d 1032, 1042 (5th Cir. 1980). It is therefore necessary to remand the issue to the district court for its determination of what rate of interest, if any, is applicable above the statutory rate of six percent.

In awarding prejudgment interest, the district court must also establish the time when the interest should begin to accrue. Benton notes that technically, interest should accrue from the date each check was withheld. It is noted, however, that for simplicity of calculation Benton asks that January 6, 1976, be set as the date at which interest should be calculated. It was on this date that the twenty-four hour deadline passed for paying or returning the last of the twenty-four checks submitted to Mount Pleasant and the total loss became ascertainable.

Prejudgment interest may be awarded from the time at which the "measure of recovery of [the] claim, and not necessarily the amount of damages, is fixed by conditions existing at the time the injury arose or was inflicted." *Dallas-Fort Worth Regional Airport*, 623 F.2d at 1040; *McDaniel v. Tucker*, 520 S.W.2d at 549 (Tex.Civ. App.—Corpus Christi 1975, no writ); *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 103 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.). Whether the actual amount of damages is disputed until trial is immaterial. *Colonial Refrigerated Transportation*, 403 F.2d at 555; *City of Texarkana*, 118 F.2d at 294. Tex.Bus. & Com. Code § 4.302 establishes the measure of recovery for checks wrongfully withheld as the value of the checks, and this Court has

---

11. One reason why these courts have awarded prejudgment interest at higher than the statutory rate is that the Texas legislature changed the statutory rate for postjudgment interest to 9% per annum effective September 1, 1975, while failing to raise the prejudgment interest rate to 9%. Because this discrepancy had no apparent justification, the courts raised the prejudgment interest rate to 9% to be consistent with the postjudgment rate. *See* Tex.Rev. Civ.Stat.Ann. art. 5069–1.05 (Vernon Supp. 1981).

established the time of the wrongful withholding under section 4.302 as twenty-four hours after the receipt of each check. The district court may therefore allow interest to accrue either from January 6, 1976 when the total loss became ascertainable or for each separate check calculated from the time when each became due.

Mount Pleasant contends that article 5069–1.03 governs the date from which any interest might accrue. That statute, in effect in 1976, required interest "on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made." Tex.Rev.Civ.Code Ann. art. 5069–1.03 (Vernon 1971). Again, the damages in the instant case result from a statutory violation, not from an open account or a written contract. Article 5069–1.03 is not applicable.

The judgment of the district court is reversed and the cause is remanded for the award of prejudgment interest at or above the statutory rate.

REVERSED AND REMANDED.