753 F.2d 66
 40 UCC Rep.Serv. 994
 TORONTO-DOMINION BANK, Appellee,
v.
CENTRAL NATIONAL BANK & TRUST COMPANY, Appellant,
v.
Kenneth HOLMQUIST and Dorothy Holmquist.
The TORONTO-DOMINION BANK, Appellant,
v.
CENTRAL NATIONAL BANK & TRUST COMPANY, Appellee,
v.
Kenneth HOLMQUIST and Dorothy Holmquist.
The TORONTO-DOMINION BANK, Appellee,
v.
CENTRAL NATIONAL BANK & TRUST COMPANY, Appellee,
v.
Kenneth HOLMQUIST and Dorothy Holmquist,
Brenton National Bank of Des Moines, Intervenor-Appellant.
 Nos. 84-1704, 84-1733 and 84-1759.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 10, 1984.
Decided Jan. 16, 1985.
 
 John Werner, Des Moines, Iowa, for Central National Bank.
 Mark E. Schantz, Des Moines, Iowa, for Toronto-Dominion Bank.
 Hayward L. Draper, Des Moines, Iowa, for Brenton Nat. Bank.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 This is an action brought by Toronto-Dominion Bank (TDB), a Canadian banking organization, against the Central National Bank (CNB), a national banking association located in Des Moines, Iowa,[1] for dishonoring and failing to return twelve checks written on behalf of Kenneth Holmquist on the latter's bank account in CNB. All of these checks were written and dishonored in November 1979. Each check was originally deposited in a branch of TDB. We dismiss the appeal without prejudice for lack of jurisdiction based upon our finding that there exists no final judgment.
 
 
 2
 Holmquist was a petrochemical broker. He arranged sales and shipment of chemicals between chemical buyers. Much of this business was conducted through Lortan Industries, Inc., an Iowa corporation, which had its primary bank account at the Brenton National Bank (BNB) in Des Moines, Iowa. All twelve of the dishonored checks were written on the CNB account of another of Holmquist's Iowa corporations, Fleetwood Industries, Inc. Holmquist maintained other bank accounts, including two with TDB.
 
 
 3
 The Toronto branch of TDB involved here was managed by one Peter Scott. Each of the twelve checks drawn on CNB had been signed in blank by Holmquist's secretary, an authorized signatory, and forwarded to Scott. Scott held the checks and completed them as necessary to cover withdrawals from the TDB accounts. Eleven of the checks were written for $60,000 each. The twelfth check was $65,000, for a total amount in controversy of $725,000. Four of the checks, totaling $240,000, were written to cover six TDB checks deposited with BNB.
 
 
 4
 In late November a teller error at CNB caused the bank to examine Holmquist's transactions. CNB officials began to suspect a check "kiting" scheme because they were able to examine activity in both the CNB and BNB accounts.[2] On November 20, CNB decided to dishonor all checks drawn on the CNB account, although it continued to accept deposits. In an attempt to minimize its losses, CNB did not inform BNB or TDB of its suspicions. On November 27, CNB notified Mrs. Holmquist the account would be closed, however closing did not actually occur until December 3. The twelve checks at issue were received for payment by CNB on November 20, 26 and 29. CNB intended to dishonor them but, in each case, failed to take proper action within the statutory time period. See Iowa Code Secs. 554.4104(1)(h), .4301, .4302 (1983).[3] In late December, Scott and TDB learned Holmquist was in financial trouble and that CNB had closed his account. TDB then suspended all activity in its Holmquist accounts. In an attempt to avoid making payments to BNB which might not be covered by the dishonored CNB checks, Scott altered his ledger records to make it appear the TDB checks had been properly dishonored.
 
 
 5
 In the summer of 1980, TDB sued CNB in the United States District Court for the Southern District of Iowa for the face value of the dishonored checks ($725,000). Subsequently, BNB sued TDB, in the same court, for the face value of the checks TDB attempted to dishonor ($240,000) and over one million dollars in compensatory and punitive damages, alleging Scott had conspired with Holmquist and that TDB was part of the kiting scheme.[4]
 
 
 6
 At the trial of the first suit, which is the subject of this appeal, CNB attempted to prove Scott and TDB participated in the kiting scheme, claiming lack of good faith on the part of TDB was an affirmative defense to the section 554.4302 action. The district court found CNB failed to carry its burden of proof on this issue. In an attempt to establish damages, TDB apparently admitted its liability for the $240,000 face value of the checks given to BNB. On this basis BNB subsequently sought to intervene under Fed.R.Civ.P. 24(a). The district court did not rule and has not yet ruled on the motion. Nonetheless, in the dispute between TDB and CNB, the court made findings of fact, conclusions of law and entered judgment in favor of TDB against CNB in the amount of $180,000 in April 1984. In rendering its judgment the district court specifically retained jurisdiction over disposition of the $240,000 (the sum apparently admitted by TDB as owing to BNB) inviting an appropriate motion at some future time to make a final disposition of damages between TDB and CNB. Although not a formal party to the litigation, BNB thereafter made a motion under Fed.R.Civ.P. 52(b) to amend the judgment. This was done after CNB had filed an appeal in this court. In August, notwithstanding the pendency of this appeal, the district court referred the matter for a settlement conference and specifically reserved ruling on the motion to intervene. Apparently no settlement was reached and the case has come before us on the appeal of CNB and cross-appeal of TDB. BNB, as proposed intervenor, has filed a brief as cross-appellant.
 
 
 7
 Because of our own jurisdictional concerns as to whether this court has been presented a final judgment for purposes of appeal, we set forth the text of relevant portions of the district court's judgment:
 
 
 8
 IT IS THEREFORE ORDERED that judgment be entered in favor of the plaintiff, Toronto-Dominion Bank, against the defendant, Central National Bank & Trust Company, in the amount of $180,000.00 on Count 1 of the plaintiff's Complaint, with prejudgment interest at the rate of ten percent from the date the complaint was filed and TDB may transfer the $125,000.00 in the suspense account to itself.
 
 
 9
 IT IS FURTHER ORDERED that judgment be entered in favor of the defendant against the plaintiff on Counts 2 and 3 of the plaintiff's Complaint. This Court will, however, retain jurisdiction and entertain a motion under rule 60(b) of the Federal Rules of Civil Procedure or any other appropriate rule at some future date pertaining to the amount of $240,000.00 that TDB may be found to be liable for to Brenton National Bank of Des Moines if such liability is in fact established and further action by this Court is warranted. (Our emphasis).
 
 
 10
 We first find that BNB has no standing to appeal here. Although failure to rule on a motion to intervene can be interpreted as an implicit denial,[5] thus giving BNB standing to appeal, in the present case the district court entered an order in August 1984 specifically reserving ruling on the motion to intervene. This order was entered despite the fact the original judgment appealed here was entered four months earlier. Because the motion to intervene has not yet been granted or denied, BNB's status remains uncertain and it has no standing to take an appeal or appear as a party.
 
 
 11
 The finality of the judgment is not affected by BNB's presence in this action. The motion to intervene by BNB as a matter of right under rule 24(a) is tenuous at best.[6] On these facts, we are satisfied that the pending motion to intervene should not affect the finality of the judgment of TDB against CNB.[7] In addition, we do not believe BNB's filing of the gratuitous motion to amend the judgment, on April 12, 1984, should properly toll the finality of the judgment between TDB and CNB. BNB was not a party to the judgment and had no standing to file a motion to amend under Fed.R.Civ.P. 52(b). We conclude the actions of BNB do not affect the finality of the district court's order.
 
 
 12
 Nevertheless, we find, sua sponte, that there was not a final judgment between TDB and CNB entered in April 1984. It is clear that the district court intended to retain jurisdiction over the litigation between TDB and CNB and to amend that judgment depending on the outcome of the litigation between BNB and TDB. The principal action by TDB was filed in August 1980. Trial began on June 13, 1983 and, on April 2, 1984, the court filed its findings of fact, conclusions and judgment. At that time, although BNB was not a party to these proceedings and did not file its motion to intervene until January 10, 1984, the district court stated in its memorandum:
 
 
 13
 The Court cannot, under the record, enter a judgment for the $240,000 amount of Brenton Bank checks and will hold that matter in abeyance pending its resolution as between Brenton and TDB.
 
 
 14
 The Court will enter judgment at this time in the amount of $180,000. Following the termination of the case between Brenton and TDB, the Court will entertain proper motions by any interested party for further final disposition of the claim involving the "series of six checks" as may then be appropriate under the circumstances.
 
 
 15
 The district court indicated it might entertain a motion under Fed.R.Civ.P. 60(b) at some future time to enter a judgment regarding the $240,000 BNB claims is owed to it by TDB. Apparently the court premises its retention of jurisdiction on this basis. But rule 60(b) applies only to final judgments or orders and would be inapplicable in the present case given our finding of no final order. Furthermore, the grounds for a rule 60(b) motion are specifically limited and set forth in the rule. Relief from a final judgment under rule 60(b) is justified only in cases of improper conduct or excusable default of a party, and even then only if relief can be given without affecting substantial rights of the parties. See United States v. Cirami, 535 F.2d 736, 738-41 (2d Cir.1976); Smith v. Jackson Tool & Die, Inc., 426 F.2d 5, 8 (5th Cir.1970); C. Wright & A. Miller, Federal Practice and Procedure Secs. 2857-64 (1973). Rule 60(b) was designed to remedy injustices discovered after a judgment has become final. If the district court wishes to enter a final order as to some claims or parties in an action while retaining jurisdiction over other claims or parties, the proper procedure to follow would be under rule 54(b).[8] Whatever the intention of the district court in this case, the suggestion of using rule 60(b) was inappropriate.
 
 
 16
 This case is quite similar to Brace v. O'Neill, 567 F.2d 237 (3rd Cir.1977). In Brace, two related discrimination cases were consolidated for trial and then, after the trial was aborted, severed. The district court subsequently entered an order in the first case granting judgment for the defendants on one claim and dismissing the other claims "without prejudice pending final decision in the related case * * *." Brace, 567 F.2d at 241 (emphasis original). A few days later a purportedly final judgment was entered. The Third Circuit concluded that the "determination of the finality--and therefore the appealability--of the * * * Order and the * * * Judgment first requires that we determine the substance of what was intended." Id. at 242. The court of appeals then scrutinized the district court's opinions and orders in the relevant cases to determine the court's intent. A similar examination of the record in the present case directs us to the same conclusion as the Third Circuit: "the proceedings below remain 'open,' 'unfinished,' and 'inclusive' * * *." Id. Thus, we conclude the April 2, 1984 order and "judgment" are not appealable under 28 U.S.C. Sec. 1291 (1982). See Cohen v. Beneficial Loan Corp., 337 U.S. 541, 545-46, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).
 
 
 17
 We conclude that the district court has made clear its intention to retain jurisdiction until further proceedings clarify the final damages in this case. On this basis we find no appellate jurisdiction and remand until a final judgment is entered.
 
 
 18
 On remand, although the district court has previously ruled on CNB's liability to TDB and did not find Scott's role in the check kiting amounted to a defense to CNB's liability, we invite the court to reexamine the issues surrounding good faith more fully. It is clear that without Scott's assistance Holmquist could not have carried out the check kiting scheme. As the district court correctly noted, the issue is a factual one of knowledge and intent. However, the more fundamental issue, not discussed by the district court, is the legal question of whether Scott's role in the kiting scheme was relevant to the section 554.4302 claim. If Scott's activities did not cause or induce CNB to miss the midnight return deadline, see section 554.4104(1)(h), then those activities, whether lacking in good faith or not, should not give rise to an affirmative defense. CNB should not be relieved of liability under section 554.4302 for its error simply because an agent of TDB lacked good faith, unless that lack of good faith in some way caused CNB to breach its return obligation under section 554.4301(2).
 
 
 19
 We also invite the district court to reexamine its finding on damages in light of TDB's argument that, in an action under Uniform Commercial Code section 4-302, the damages are determined by the face value of the checks. See Union Bank of Benton v. First National Bank, 677 F.2d 1074, 1079-80 (5th Cir.1982); Central Bank & Trust Co. v. First Northwest Bank, 332 F.Supp. 1166, 1169 (E.D.Mo.1971), aff'd, 458 F.2d 511 (8th Cir.1972); Bank Leumi Trust Co. v. Bank of Mid-Jersey, 499 F.Supp. 1022, 1024, 1027 (D.N.J.1980), aff'd, 659 F.2d 1065 (3d Cir.1981); United States v. Loskocinski, 403 F.Supp. 75, 79 (E.D.N.Y.1975); Met Frozen Food Corp. v. National Bank of North America, 89 Misc.2d 1033, 393 N.Y.S.2d 643, 647 (N.Y.Sup.Ct.1977). If this is true, the ultimate liability of TDB to BNB would not affect CNB's liability to TDB.
 
 
 20
 The appeals by CNB and TDB, Nos. 84-1704, 84-1733, are ordered dismissed for lack of jurisdiction. The appeal by BNB, No. 84-1759, is also ordered dismissed without prejudice. The case is remanded for further proceedings consistent with this opinion. Each party will bear its own costs.
 
 
 
 [1]
 The record shows that CNB is known today as United Central Bank
 
 
 [2]
 CNB was BNB's correspondent bank and cleared checks for BNB
 
 
 [3]
 Under Iowa law a bank which dishonors payment of a check is required to give notice of dishonor to the presenting bank by midnight of the next banking day following the banking day on which it received the check. Iowa Code Sec. 554.4104(1)(h) (1983)
 
 
 [4]
 We are informed by the parties that TDB, as a Canadian citizen, has challenged jurisdiction over it in the BNB suit
 
 
 [5]
 Denial of a pending motion may be implied from the entry of final judgment or any order inconsistent with the granting of the motion. See Addington v. Farmer's Elevator Mutual Ins. Co., 650 F.2d 663, 666 (5th Cir.), cert. denied, 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981); Cohen v. Curtis Publishing Co., 333 F.2d 974, 977 (8th Cir.1964), cert. denied, 380 U.S. 921, 85 S.Ct. 923, 14 L.Ed.2d 283 (1965)
 
 
 [6]
 Although BNB claims it is intervening as a matter of right under Rule 24(a), its claim is directed solely against TDB and cannot affect CNB's liability to TDB. BNB's interest will not be impaired by the disposition of the claim of TDB against CNB
 
 
 [7]
 As the Advisory Committee Notes to Rule 24(a) indicate, intervention as a matter of right is the counterpart to Rule 19(a)(2)(i) on indispensible parties. BNB's claim demonstrates that it is not an indispensible party to the suit in question. See Fetzer v. Cities Service Oil Co., 572 F.2d 1250, 1253-55 (8th Cir.1978)
 
 
 [8]
 We mention this only as a recognized procedure, but not one necessarily suitable for use here. Unless there exists sufficient reason, rule 54(b) should not be used where a final judgment on all issues will equally protect all parties and serve to avoid piecemeal appeals