Paul G. VEALE, et al., Appellants,

v.

Larry L. ROSE, Appellee.

No. 13–82–014–CV.

Court of Appeals of Texas,
Corpus Christi.

June 16, 1983.

Rehearing Denied Aug. 31, 1983.

Neil Norquest, Walter Passmore, Ewers & Toothaker, McAllen, Ralph E. Hartman, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellants.

E.R. Fleuriet, Wiley, Hale & Fleuriet, Harlingen, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

NYE, Chief Justice.

This is a partnership dispute. Larry Rose sued his former partners, Paul G. Veale, Sr., Paul G. Veale, Jr., Gary W. Gibson, and James H. Parker, and the continuing partnership, Paul G. Veale and Company, for breach of contract, an accounting and money judgment for sums due him under a written partnership agreement. He also sought declaratory relief as to his right to other sums to become due him in the future under the agreement. He asked for interest as damages on the sums which he alleged had been wrongfully detained, and for attorney's fees.

The appellants counterclaimed for sums allegedly due them for accounting services rendered by Rose to partnership clients in competition with the partnership, and for partnership assets allegedly used by Rose for which the partnership had never been reimbursed. In addition, they cross-acted against a third party defendant, Larros, Inc. (Tex-Pack Express), to recover the value of partnership services allegedly rendered to that defendant for which no payment had been received.

After a lengthy trial to a jury, and based upon its verdict, the trial court entered a judgment for Rose in the amount of $177,-670.34, including interest and attorney's fees, and a declaratory judgment declaring that additional sums would become due and payable to Rose at certain intervals. The trial court also rendered judgment that the appellants take nothing by their counterclaim, and dismissed their cross-action.

The parties involved are all certified public accountants who were engaged in the business of rendering professional accounting services, as partners under the firm name Paul G. Veale and Company. The written partnership agreement expressed the general duties of the partners as well as specifying the different aspects of the business for which each partner would have primary responsibilities. The agreement expressly recognized that Veale, Sr. and Rose had outside investments and a number of other business commitments. All partners were allowed to pursue other business activities and to receive compensation therefor, so long as the activities did not conflict with the partnership practice of public accounting or materially interfere with the partners' duties to the partnership. The partnership agreement contained express provisions for the determination of the value of a partner's share of the business and the procedures for payment of the same in the event of withdrawal.

Appellants do not challenge the findings of the jury on the amounts owing to Rose under the partnership agreement, or the declaratory judgment of the trial court regarding the future payments. This part of the judgment will be affirmed. Appellants do challenge the negative findings of the jury on their counterclaim, as well as the award of interest damages and attorney's fees.

Special Issue No. 7 read as follows:

"Do you find from a preponderance of the evidence that Larry Rose did any of the following:

(A) Performed accounting services for outside clients while a partner of Paul G. Veale and Company, in competition with the partnership?

(B) Failed to bill Tex-Pack Express for Paul G. Veale and Company employee time and computer time used to render services to Tex-Pack Express?

(C) Used Paul G. Veale and Company employees to render secretarial services to any of the following and did not bill for same:

(1) Tex-Pack Express

(2) Cameo Broadcasters

(3) Right Away Foods

(D) Obligated the partnership for an unauthorized debt?"

The jury answered each of these questions in the negative. Appellants challenge on appeal each of these findings except the last (D) on grounds of the sufficiency of the evidence. In reviewing these points, we follow the familiar rules for determining the legal and factual sufficiency of the evidence which have long been established by our Supreme Court. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); and later see: *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980).

▆▆▆▆ The partnership agreement between Rose and the appellants provided, in part:

"Except with the expressed approval of the other partners as to each specific instance, no partner shall perform any public accounting services or engage in the practice of public accounting other than for and on behalf of this partnership."

Partners may be said to occupy a fiduciary relationship toward one another which requires of them the utmost degree of good faith and honesty in dealing with one another. *Huffington v. Upchurch*, 532 S.W.2d 576 (Tex.1976); *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951). Breaches of a partner's duty not to compete with the partnership are compensable at law by awarding to the injured partners their proportionate shares of the profits wrongfully acquired by the offending partner. *Huffington v. Upchurch, supra.*

▆▆▆▆ It is undisputed that while a partner of Paul G. Veale and Company, Rose rendered accounting services for Right Away Foods for which he billed and received payment personally. It is also undisputed that the partnership did not share in the proceeds of these private billings. It was established that Rose was an officer and shareholder in Right Away, but that the compensation Rose received for his accounting services was not received in that capacity. There was some testimony from which the jury could have inferred that the work which Rose did for Right Away Foods for

which he was paid (personally) was of a type which did not require the services of a CPA. However, Rose himself admitted that he billed Right Away Foods for the services of a CPA, holding himself out as such on his letterhead. He also admitted that there was no reason why he coul dnot have rendered the same services to Right Away Foods as a partner in the accounting firm. At least one of the other partners, Parker, testified that he knew of other public accounting firms which performed the types of services in question. In fact in regard to services in connection with mergers and acquisitions, he indicated that he was unaware of any required forms that are not prepared by public accounting firms. The preponderance of all of the evidence clearly establishes that Rose had, in fact, performed accounting services for Right Away Foods while a partner of Paul G. Veale and Company, in competition with the partnership. The jury's answer in this respect was in error. (Special Issue 7[A] ).

The record reveals that Rose also admitted that he performed accounting services for various enterprises owned by Mr. Ed Payne during his tenure as a partner at Veale for which he billed and received payment for personally. There is no question that those services were public accounting services. His later testimony that he performed these services, in effect, after hours, or in addition to his duties to the partnership, is of no value in light of the obligations imposed by the partnership agreement and by the common understanding of the term "competition."

The second part (B) of Special Issue 7 asked whether Rose "failed to bill Tex-Pack Express for Paul Veale and Company employee time and computer time used to render services to Tex-Pack Express [?]." The jury's answer to this question was also negative.

▆▆▆▆ The misappropriation by one partner to his own use of property, of the partnership is considered in law as constructive if not actual fraud on the partnership, and is actionable. See *Jewell v. Jewell*, 602 S.W.2d 315 (Tex.Civ.App.—Texarkana 1980,

no writ); *Smith v. Bolin,* 261 S.W.2d 352 (Tex.Civ.App.—Fort Worth 1953), aff'd in part, rev'd in part on other grounds, 153 Tex. 486, 271 S.W.2d 93 (Tex.1954).

Again, the record is replete with Rose's admissions that he had used employee and computer time and had not billed Tex-Pack Express for their services. His explanations and assertions that his action in not billing Tex-Pack Express was done with the knowledge and consent of Paul G. Veale, Sr. are also of no effect, as far as this issue is concerned.

The third inquiry (C) of Special Issue 7 was whether Rose used Paul G. Veale and Company employees to render secretarial services, without charge, to Tex-Pack Express, Cameo Broadcasters, or Right Away Foods. Rose testified that some of the time spent by Paul G. Veale and Company employees for Tex-Pack Express was billed. This assertion was confirmed by the introduction into evidence of some of the statements generated. It was not shown that these billings could not have covered all of the secretarial services of which there was evidence that Rose's secretary at the partnership performed special services on behalf of Tex-Pack.

Concerning Cameo Broadcasters, there was evidence in the record that during the period in question, that Cameo Broadcasters paid to Paul G. Veale and Company a retainer of $250.00 per month. Rose testified that the time spent by his secretary on behalf of Cameo was covered by the retainer. There was no evidence to the contrary.

■ The only evidence of Rose's use of partnership secretarial time on Right Away Foods (7c3) was the testimony of his secretary that she had approximately "fifty sheets" of Right Away Foods stationery in her desk on which she had occasionally typed some correspondence. The secretary could not state whether her time was billed to Right Away Foods. It was established that, during that same period of time, Paul G. Veale and Company billed Right Away Foods and received compensation for substantial amounts of accounting and staff time. Rose had the personal responsibility for the partnership's billings. The appellants failed to establish that the billings to Right Away Foods did not cover the time expended by Rose's secretary on Right Away correspondence. The jury's negative answer in part 3(c) of Special Issue No. 7 with respect to all three companies is not so against the great weight and preponderance of the evidence so as to be manifestly unjust.

Our determination that the jury's responses to the first two parts of the seventh special issue were against the great weight and preponderance of the evidence, and indeed in some respects completely contrary to the evidence, necessitate that we reverse that part of the trial court's judgment that the appellants take nothing by their counterclaim.

■ In this respect, there were fact issues existing as to whether the appellants waived their rights to complain about such matters. Rose has referred us to the record of considerable evidence that his former partners knew of his involvement with Right Away Foods and Ed Payne, as well as to his use of partnership assets on behalf of Tex-Pack Express, and that they never complained about them. According to Rose, there was at least tacit agreement or acquiescence by all the partners to his actions in these matters. He also cited evidence of personal use of partnership assets by other partners which, if believed by the jury, could support an issue of estoppel.

However, these defenses were not covered by Special Issue No. 7, but rather were reserved for later issues which the jury did not answer because their negative answer to all of Special Issue No. 7. Also, there was contrary evidence on these issues. Because no answers have been provided by the jury or by the trial court on Rose's defensive issues, and because this Court is in no position to supply such answers, we must remand this aspect of the case for a new trial.

Appellants bring to us a number of points of error relating to Rose's successful claim for prejudgment interest as damages under

the equitable doctrine for use or detention of money. See *Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480, 485 (Tex.1978). Appellants do not challenge the right of Rose to recover such damages or the theory under which he pled for them. They challenge the form in which the issue was submitted to the jury and the evidence to support the answer and the judgment awarded thereon.

The special issue submitted over appellants' objection inquired:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly compensate Mr. Rose *for loss of use of funds* due him but not paid to him in accordance with the terms of the partnership agreement?" (Emphasis supplied.)

Rose testified concerning the amounts that he established were due and owing to him under the partnership agreement and the various dates of accrual of the different sums. He presented his calculations of his alleged damages for the wrongful use and detention of his money. Applying a return of 15% to these amounts from the accrual dates, Rose testified that the amount of his damages in this regard was $11,832.94.

The testimony from the appellants on the issue was to the effect that they had offered Rose the amounts which they did not dispute were owed on the due dates. Later, during the pendency of the suit, these undisputed portions were deposited by appellants into the registry of the court. An order was obtained by the appellants in which the trial court ordered the District Clerk "to receive said sums of money and hold said sums of money secure and safe during the pendency of this cause of action, and distribute said funds as ordered by this court upon the resolution of this cause of action." Appellants argue that they should not have to pay interest on these amounts which they did not dispute were owing and which they claimed that they had offered to Rose in a timely fashion. In any event, they argue, they should not have to pay interest on the money after it was once deposited into the registry of the court be-

cause they did not have control or use of the funds after that. Rose contends that he did not have the funds either.

The jury's response to the issue was the full $11,832.94 requested by Rose. The trial court awarded such sum as damages to compensate Rose for the loss of the use of the funds.

Appellants' objections to the form of the issue are threefold. First, they contend that the trial court should have limited the jury to a consideration of damages in the form of interest only on those disputed amounts which were not "tendered" to Rose or into the registry of the court. This point involves the same considerations as appellants' challenges to the sufficiency of the evidence to sustain the jury's finding on this issue and the trial court's judgment thereon. Second, appellants claim the trial court erred in failing to instruct the jury as to the time periods it should consider in making such an award. Third, appellants maintain that the trial court should have instructed the jury as to the maximum amount of interest allowed by law.

The rationale for the cause of action for damages for the wrongful use or detention of money is based on the principle of the prevention of unjust enrichment. *Phillips Petroleum Co. v. Stahl Petroleum Co., supra; Republic National Bank v. Northwest National Bank,* 578 S.W.2d 109 (Tex.1979). Because this is the theory, and because this is an equitable remedy, the appellants argue that they are not responsible for damages on the money which they affirmatively showed they did not have the use of, either because they had written checks to Rose which he held uncashed, or because they tendered the sums into the registry of the court.

Rose correctly points out that, in Texas, "tender" is defined as "an unconditional offer by a debtor or obligor to pay another, in correct coin of the realm, a sum *not less in amount* than that due on a specified debt or obligation." (Emphasis supplied.) *Baucum v. Great American Insurance Co. of New York,* 370 S.W.2d 863, 866 (Tex.1963); *French v. May,* 484 S.W.2d

420 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). An offer to pay less than the sum due is not a legally effective tender. *French v. May, supra.* Appellants could not stop the running of interest on the money owed by tendering incorrect amounts to Rose.

The payment of the sums into the registry of the court presents a different matter. The tender of amounts in controversy into the registry of the court has been held to be effective to prevent the accrual of damages for the use of such funds after the date of such tender. *Carter v. Barclay,* 476 S.W.2d 909 (Tex.Civ.App.—Amarillo 1972, no writ); *Phillips Petroleum Co. v. Adams,* 513 F.2d 355, 368 (5th Cir.1975). Likewise, where the funds in dispute were shown to have been placed in the hands of an escrow agent and so not at the disposal of the defendant, equitable damages in the form of prejudgment interest were disallowed. *Anderson v. Havins,* 595 S.W.2d 147 (Tex.Civ.App.—Amarillo 1980, no writ).

Admittedly, in the instant case, the amounts placed in the registry of the court were less than the full amount in controversy. However, this case should not be distinguished on that ground alone. The recovery of interest damages under the equitable doctrine has consistently rested squarely and solely on the idea of compensation for the unauthorized *use* of another's money. *Phillips Petroleum Co. v. Stahl Petroleum Co., supra,* at 485–88; *Republic National Bank v. Northwest National Bank, supra; Anderson v. Havins, supra; Miles v. Royal Indemnity Co.,* 589 S.W.2d 725 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.). It is undisputed that appellants did not detain or use the funds once they were deposited with the court. There is nothing in the record to indicate that any special conditions were attached to the tenders when made to the court's registry. There is nothing to indicate that Rose demanded use of such sums. Rose did not petition the trial court to release the undisputed monies

without prejudice to his claim for the balance.

To hold damages due to Rose on the amounts held in the registry of the court because he did not have use of the funds would turn his cause of action on this issue from an equitable one based on unjust enrichment into a legal one for lost profits. That is not supported by the pleadings or the evidence. We, therefore, sustain appellants' first two objections to the submission of the special issue on damages for the appellants' detention of Rose's money.

Appellants' argument under their third objection to the trial court's failure to instruct the jury as to the maximum interest rate allowed by law, is based solely upon their argument under the first two points. They reason that if no interest was due on the monies after they had been placed in the registry of the court, the lump sum rendered by the jury as damages would clearly exceed the maximum allowable interest rate on the amounts in controversy for the periods in question, and therefore Rose should be entitled to nothing.

Appellants raised no complaints either at trial or here on appeal as to the propriety of the rate of 15% per annum upon which the interest damages award was based,[1] and we express no opinion thereon other than to state that there was ample evidence to support such an amount. Therefore, that part of the trial court's judgment which awards Rose damages for "loss of use of funds due him under the partnership agreement but not paid to him in accordance with its terms" is necessarily reversed because it was incorrectly calculated. Instead, we here render judgment for Rose for damages for the wrongful use and detention of his money, measured by a rate of return of 15% per annum simple interest on all funds wrongfully detained and used by the appellants. In figuring the exact amount due and owing to Rose, such sum shall be calculated on the following formula.

---

1. The record showed that, during the period of time that appellants detained appellee's money, interest rates were very high and investment of funds for a return of 15% was reasonable.

First, for the amounts of money that appellants deposited into the court's registry, the amount of interest due thereon shall be that which accrued from the dates on which the amounts should have been paid to Rose to the dates on which the sums were tendered to the court.

Second, for the remainder of the funds owed Rose, interest at the above rate (15% per annum) shall be paid from the original due dates under the partnership agreement to the date of the trial court's judgment, October 8, 1981.

Third, for the total of the first and second sums above, interest shall accrue at the rate of 9% per annum from the date of judgment, October 8, 1981, until paid by the appellants jointly or severally.

Appellants challenge the sufficiency of the evidence on the issue of Rose's attorney's fees because the amount of the attorney's time spent on the prosecution of Rose's claim against the partnership was not segregated from the time spent on the defense of the appellants' counterclaim. It is not disputed that the jury's finding on attorney's fees and the judgment of the trial court based thereon were for an aggregate amount of time spent by Rose's attorneys on all the matters connected to the lawsuit. Appellants' counsel objected to the submission of the issue and requested the trial court to disregard the jury's answer to the issue on attorney's fees on the non-segregation grounds.

■ Generally, attorney's fees are not recoverable unless the same is provided by statute or by a contract between the parties. *New Amsterdam Casualty Company v. Texas Industries, Inc.,* 414 S.W.2d 914 (Tex.1967); *Bray v. Curtis,* 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). It is conceded that Rose should be entitled to attorney's fees necessary to the prosecution of his claim for an accounting, damages for breach of contract and declaratory relief, all of which were founded upon a written contract within the meaning of Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1982). Article 2226 does not provide for attorney's fees for the defense of claims, and there is no such provision in the partnership agreement. However, there is an exception to the general rule of law for cases in which the matters encompassed by the claim and counterclaim are indistinguishable, where they arose from the same transactions, where the same facts required to prosecute the claim are required to defend against the counterclaim. *First Wichita National Bank v. Wood,* 632 S.W.2d 210 (Tex.App.—Fort Worth 1982, no writ); *Wilkins v. Bain,* 615 S.W.2d 314 (Tex.Civ. App.—Dallas 1981, no writ); *Ortiz v. O.J. Beck and Sons, Inc.,* 611 S.W.2d 860 (Tex. Civ.App.—Corpus Christi 1980, no writ). *See also Williamson v. Tucker,* 615 S.W.2d 881 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

■ In this case, the claim and counterclaim are very closely related. Though based on different provisions, the claim and counterclaim alleged breaches of the same contract. Basically, the same facts on which the appellants based their affirmative defenses to Rose's suit formed the basis of their counterclaim. Therefore, Rose's counsel, by necessity, spent no more time in preparation to defend against the counterclaim than was necessary to meet appellant's defenses to the primary lawsuit. The two actions are so interrelated that no distinction between the prosecution of Rose's claim and the defense of the counterclaim is necessary. *Ortiz v. O.J. Beck & Sons, Inc., supra; Wilkins v. Bain, supra.* Therefore, appellant's complaints about the attorney's fees award are overruled.

We affirm that portion of the trial court's judgment which awarded Rose the amounts established by him as due and owing under the partnership agreement and for his attorney's fees as awarded by the trial court. We reverse that portion of the judgment which awarded Rose actual damages for loss of the use of funds due him and render judgment with instructions that said amount be recalculated by the parties in accordance with the instructions set forth in

this opinion.[2] We reverse and remand that portion of the trial court's judgment which ordered that appellants take nothing on their counterclaim. In all other respects, the judgment of the trial court is affirmed. Costs are assessed three-fourths against appellants and one-fourth against appellee. Affirmed in part; reversed and rendered in part; and reversed and remanded in part.

## OPINION ON MOTION FOR REHEARING

This Court, in its original opinion filed June 16, 1983, ordered the parties to recalculate the amount of actual damages in dollars and cents that would be owed to Rose if figured in accordance with this Court's instructions. Following the instructions of this Court, the parties have stipulated that the sum due and owing for actual damages for loss of the use of funds to Rose is in the amount of $7,276.16. We, therefore, render judgment in this amount to be the amount due and owing to Rose as of the date of the trial court's judgment.

In all other respects, the judgment of this Court stands as it appeared in our original opinion.

We have carefully considered all of appellee's points, and they are overruled.

---

**2.** Because all of the parties are accountants and because there are varying due dates and varying amounts of monies due, but such amounts and dates are well known to all of the parties to this case, the Court here orders the parties appellant and the party appellee to each calculate the exact amount due and owing, based on this Court's instructions. The parties shall submit one copy of the correct amount, with its calculations, to this Court and one copy to the other party within 10 days from the date of this opinion. In the event the amounts are not exactly the same, the parties will try to resolve the differences before submitting the same to this Court.