ATLAS VAN LINES, INC., Appellant,

v.

Mike BROOKES, Appellee.

No. 07–83–0263–CV.

Court of Appeals of Texas, Amarillo.

April 26, 1985.

Jones, Trout, Flygare, Moody & Brown, Jeffrey B. Jones, Lubbock, for appellant.

Brummett & Brummett, Craig Brummett, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Atlas Van Lines, Inc. appeals from a judgment, rendered after a jury trial, decreeing its liability to Mike Brookes for $1,500, fixed by the jury as the fair market value of Brookes' household furniture which Atlas failed to deliver, and for $850, the stipulated amount of attorney's fees. Concluding that the trial court rendered the proper judgment, we affirm.

Atlas is a common carrier subject to regulation by and to the order of the Railroad Commission of Texas. Atlas accepted Brookes' household furniture located in Dallas for shipment to Lubbock. The 19 December 1978 intrastate bill of lading issued by Atlas and signed by Brookes provided that the shipment of the furniture, the value of which was declared by Brookes to not exceed sixty cents per pound per article, was to be from Brookes' Dallas address and was:

| CONSIGNED TO | SAME [Michael Brookes] | | | |
|---|---|---|---|---|
| ADDRESSED | SIT ORIGIN | | | |
| FLOOR | | ELEV. | TEL. | |
| CITY | LUBBOCK | STATE | TEXAS | |

The address designation of "SIT ORIGIN" meant that the furniture was to be stored in transit in the Dallas area for ultimate shipment to Lubbock.

The furniture was delivered by Atlas to a warehouse in Irving for temporary storage; but, when it remained there after 180 days, the temporary storage was converted to permanent storage on 16 June 1979 as required by an order of the Railroad Commission evidenced by Supplement No. 11 to the Commission's Motor Freight Commodity Tariff No. 3–K, then the controlling regulations. Brookes paid the monthly storage charges for the period 16 June 1979 to 19 August 1981.

By his 19 August 1981 letter, Brookes requested Atlas to "[p]lease move the furinture [sic] you have stored for me to the above address [Brookes' address in Lub-bock, Texas] as soon as possible." On 9 September 1981, Atlas prepared, but Brookes was not asked to and did not sign, a bill of lading for delivery of the furniture to Brookes' Lubbock address. This bill of lading cited the different and higher rate called for by the Commission's then current Tariff No. 3M, which Atlas was bound to charge. Tex.Rev.Civ.Stat.Ann. art. 911b, § 4(a) (Vernon Supp.1985). The bill of lading also contained a provision, Section 8, stating that:

If this bill of lading is issued on the order of this shipper, or his agent, in exchange or in substitution for another bill of lading, the shipper's signature to the prior bill of lading as to the statement of value or otherwise ... shall be considered a part of this bill of lading as fully as if the same were written or made in or in connection with this bill of lading.

Atlas obtained Brookes' furniture from the warehouse on 11 September 1981 for shipment to Lubbock, but never delivered it to Brookes.

Atlas tendered to Brookes $246, computed from Brookes' declaration on the 1978 bill of lading to be the value of the undelivered furniture, but Brookes refused the tender. Then, Brookes filed suit against Atlas, alleging misrepresentations made actionable by the Deceptive Trade Practice Act, Texas Business & Commerce Code § 17.50(a) (Vernon Supp.1985), breach of contract and negligence by Atlas.

The jury failed to find that Atlas made any misrepresentations to Brookes, but found, in answering the only remaining issue unconditionally submitted, that the fair market value of Brookes' furniture was $1,500. The trial court, expressing in the judgment the belief that the verdict was for Brookes, rendered judgment decreeing that Brookes recover from Atlas the $1,500 found by the jury as the fair market value of the furniture and the $850 stipulated for attorney's fees.

In appealing, Atlas does not challenge the jury's finding of the fair market value of Brookes' furniture; instead, Atlas contends, in the first three of its four points of error, that Brookes' recovery is limited to the sixty cents per pound per article, computed to be the $246 tendered by Atlas, as declared by him in the 1978 bill of lading, rather than the $1,500 fair market value awarded by the court. Also, Atlas contends, in its fourth point, that Brookes was not entitled to attorney's fees because it tendered the $246 amount due under the bill of lading.

■ The litigants are agreed that the general rule in Texas is that a carrier may not limit or restrict its liability as it exists at common law. *See National Moving and Storage, Inc. v. Vargo,* 501 S.W.2d 452, 454 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). They also are agreed that a carrier's common law liability may be limited by statute, and that Atlas, as a carrier "expressly authorized or required by order of the Railroad Commission of Texas to establish and maintain rates dependent upon the value declared in writing by the shipper of the property or agreed upon in writing as the released value of the property," may "limit liability and recovery to an amount not exceeding the value so declared or released" in the declaration or agreement. Tex.Rev.Civ.Stat.Ann. art. 883 (Vernon Supp.1985). In this regard, Atlas was not required to accept Brookes' furniture for transportation unless he first declared in writing the reasonable value thereof, as he did, in which event "[t]he carrier shall not be liable in damages for an amount in excess of such declared value for the loss ... of such property." Tex.Rev.Civ.Stat. Ann. art. 883(a) (Vernon 1964).

As a threshold matter, it is to be noticed that, as Atlas conceded on submission, the Section 8 provision in the 1981 bill of lading does not operate to make Brookes' declaration of value on the 1978 bill of lading a part of the 1981 bill of lading, since Brookes did not order the latter to be issued in exchange or in substitution of the former bill of lading. The determinative question, then, is whether, as a matter of law under the circumstances, Atlas' liability is determined by Brookes' declaration on the 1978 bill of lading or at common law as represented by the jury's finding of fair market value.

■ It is, of course, beyond dispute that the provisions of the 1978 bill of lading will control to limit Atlas' liability so long as that bill of lading remains in force; but, if it was terminated before the 1981 shipment, the common law controls Atlas' liability. Atlas argues that the original bill of lading remained viable because, under it, a move of Brookes' goods from Dallas to Lubbock with some time spent in storage was contemplated, and Brookes never indicated that he wanted to alter the terms under which Atlas accepted the shipment. However, our view of the law is that the 1978 bill of lading expired on 16 June 1979 when the storage-in-transit was converted to permanent storage. Then, when Atlas secured the furniture from permanent storage for shipment under the 1981 bill of

lading without Brookes' declaration in writing of a released value for the shipment, Atlas' liability was controlled by common law.

Supplement No. 11 to the Commission's Tariff No. 3–K was before the court. Its Section 1 for general application to storage-in-transit provides, in Part I(b) under Item No. 70–B, that when shipments are placed in storage-in-transit and not removed by the expiration of the 180-day storage period permitted, the liability of the carrier shall terminate at midnight on the 180th day, and the property then shall be subject to the laws governing warehousing and to the rules and charges of the warehouseman. When this occurs, according to the testimony of Craig Wilkinson, a Railroad Commission rate auditor and acting supervisor of the Transportation Division, the bill of lading terminates. Indeed, Atlas judicially admitted that the 1978 and 1981 bills of lading "are entirely separate shipping contracts."

It, therefore, does not profit Atlas to argue, as it does, that Brookes' testimony indicates he wanted his goods shipped in 1981 under the same terms and conditions as originally agreed to in 1978. The statutes authorizing the limitation of the carrier's liability for damage to or loss of goods accepted for shipment require that the declaration of value, which limits the carrier's common law liability, be in writing, articles 883, 883(a), *supra*, and Brookes did not make a written declaration of value for the shipment under the 1981 bill of lading.

Nor does it benefit Atlas to rely on *Elizabeth-Perkins, Inc. v. Morgan Express, Inc.*, 554 S.W.2d 216 (Tex.Civ.App.—Dallas 1977, no writ), as authority for the limitation of its liability. In *Elizabeth-Perkins*, which did not involve the circumstance of in-transit storage, the carrier's liability was limited by a then prevailing tariff provision to $50, the amount of liability specified on the waybill under which the goods were shipped, in the absence of a greater value declared by the shipper. 554 S.W.2d at 217–18. In the cause before us, there is no contention that Atlas' liability is limited by either a prevailing tariff provision or a specified amount in the 1981 bill of lading under which Atlas secured Brookes' furniture for shipment.

Consequently, we conclude that the trial court correctly fixed Atlas' liability for the loss of Brookes' furniture at common law in the unchallenged amount of $1,500 found by the jury. Atlas' first three points of error are overruled.

Under its previously mentioned fourth point of error, Atlas asserts that the court erred in awarding Brookes attorney's fees of $850, the amount stipulated to be reasonable and necessary for the trial of the cause, pursuant to article 2226 of the Texas Revised Civil Statutes Annotated (Vernon Supp.1985) because Brookes was tendered $246, the 1978 declared value of his goods. In this regard, article 2226 provides that reasonable attorney's fees may be recovered if the just amount owing on a valid claim for, among other things, lost freight or express has not been tendered by the expiration of 30 days from the presentment of the claim.

Our Supreme Court has defined "tender" to mean an unconditional offer by a debtor or obligor to pay another a sum not less than that due on a specified debt or obligation, *Baucum v. Great American Insurance Co. of New York*, 370 S.W.2d 863, 866 (Tex.1963), and it has been determined that an offer to pay a lesser amount is not a legally effective tender. *Veale v. Rose*, 657 S.W.2d 834, 840 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Since we have concluded that Atlas' liability was not limited to the $246 computed as the declared value in 1978, the tender of that sum was not a legally effective tender of the $1,500 found as the just amount owing for the lost household furniture. *Id.* It follows that the court did not err in awarding attorney's fees in the stipulated amount of $850. The fourth point is overruled.

The judgment of the trial court is affirmed.