IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 15, 2009

Charles R. Fulbruge III
Clerk

No. 08-20290
Summary Calendar

KAREN D. MCNEIL

Plaintiff-Appellant

V.

BMC SOFTWARE INC.

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-2492

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellant Karen D. McNeil challenges the district court's failure to allow her to proceed to a jury verdict on her claim for hostile work environment under 42 U.S.C. § 1981 (1991), and the court's denial of her motion for attorney's fees. Appellee BMC Software re-urges its previously unsuccessful motion to dismiss this appeal. Finding jurisdiction, we again deny BMC's motion to dismiss, and AFFIRM the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

McNeil began working at BMC Software as the company's Director of Global Staffing in September 2004. Under a letter agreement setting forth the terms of her employment, McNeil received an immediate sign-on bonus of $35,000, and an additional $20,000 bonus was to be paid after one year of employment. The contract obligated McNeil to reimburse BMC the entire bonus if her employment was "terminated voluntarily or for cause within twelve months," and provided that she was entitled to the second installment if she left BMC "for any reason outside of voluntary or for cause termination prior to the first 12 months" of employment.

By late 2004 and early 2005, the working relationship between McNeil, an African-American female, and BMC Senior Vice President of Administration Jerome Adams ("Adams"), an African-American male, had degenerated. It is undisputed that Adams was unhappy with McNeil's job performance, and McNeil felt intimidated, harassed, humiliated, and threatened by Adams's abusive conduct. McNeil concluded that the harsh treatment was due to her race. Finally, after a heated meeting between McNeil and Adams on February 17, 2005, McNeil informed BMC that she was resigning. McNeil's direct supervisor, Todd Reeves, asked McNeil to reconsider her decision, and arranged for her to remain at the company until March 31, 2005, so she would be eligible for a quarterly bonus. At her March 17, 2005 exit interview, BMC presented McNeil a separation agreement by which she would retain the $35,000 bonus payment and relocation costs. McNeil refused to sign the agreement, and claims to have orally demanded payment of the remaining sign-on bonus at that meeting. Her resignation was effective March 31, 2005, and she filed suit on

July 27, 2006, alleging violations of Title VII, 42 U.S.C. § 1981,[1] and breach of contract. BMC counter-sued for breach of the same letter agreement.

Following an oftentimes contentious period of discovery, the district court granted summary judgment as to McNeil's untimely Title VII claims and BMC's claim of breach of contract, and denied summary judgment on McNeil's § 1981 claims and her breach of contract action. The court subsequently heard oral argument on a motion to reconsider its denial of BMC's motion for summary judgment, and indicated that it was a "close question" as to whether summary judgment was appropriate for McNeil's constructive discharge claim. The motion for summary judgment was again denied. After voir dire, but before the trial began, BMC sought to clarify the issues in the case, since McNeil implied that she had pled a claim for hostile work environment under § 1981. McNeil urged that a hostile work environment claim was contained within the complaint, and the district court stated, "I don't want you mentioning that until we've resolved that issue. I didn't see it . . . . Don't mention it in the opening statements."

Despite the district court's belief that the hostile work environment claim had not been sufficiently pled under Rule 8(a) of the Federal Rules of Civil Procedure, the court did not formally grant dismissal of a hostile work environment claim or otherwise strike references to that claim, other than by directing the parties not to mention it in opening. McNeil has not argued that the district court prevented her from setting forth all evidence to establish the allegations in her complaint, and has pointed to no proffer of items that were withheld from the jury. Before the district court delivered the jury charge, BMC

---

[1] The parties disagree as to whether McNeil alleged both constructive discharge and hostile work environment under § 1981. In her complaint, McNeil stated that Adams "became more relentless in his agenda to create a hostile work environment," which made conditions so intolerable that McNeil was forced to resign "rather than subject herself to the hostile work environment."

inquired, "at some time could we get an estimate on when we'll decide what causes of action are in this case?" McNeil argued that the jury should be instructed on the elements of a hostile work environment claim, because it was "almost like a lesser included offense" within her broader constructive discharge case. The district court, already concerned that any hostile work environment claim under § 1981 had not been properly pled, concluded that there was insufficient evidence, as a matter of law, to establish a hostile work environment. Accordingly, the district court denied McNeil's request to include an instruction and jury question about hostile work environment.

The jury returned a split verdict, finding BMC responsible for breaching McNeil's employment contract, but finding that there was no constructive discharge. The district court considered BMC's post-verdict motion for judgment non obstante veredicto ("JNOV") and motion for remittitur, and McNeil's motion for judgment as a matter of law. On January 22, 2008, the district court granted, in part, BMC's JNOV motion, granted remittitur to reduce the jury award to $24,269.74, and denied McNeil's motion for judgment as a matter of law. BMC has not appealed these rulings.

On January 29, 2008, McNeil filed an application for attorney's fees for prevailing on her breach of contract action and defeating BMC's cross-claim for breach of contract. The court entered its initial final judgment on February 12, 2008, without ruling on attorney's fees, but McNeil filed a motion to amend the final judgment to include attorney's fees on February 14, 2008. The district court heard argument on March 6, 2008, and orally granted a motion to continue the deadline for appeal by twenty days. The electronic docket sheet for that day reflects the following minute entry: "Time to file a Notice of Appeal is extended by 20 days." The deadline was extended to April 15, 2008 by a subsequent written order dated March 26, 2008, and the district court's amended final judgment was entered on April 3, 2008. McNeil filed a motion for

reconsideration on April 14, 2008, and, on April 15, the court further extended the appellate deadline thirty days from its disposal of the motion to reconsider. The motion to reconsider was denied on May 2, 2008, and McNeil filed her notice of appeal the same day.

## A.    Motion to Dismiss

BMC reurges its motion to dismiss this appeal, arguing that McNeil's notice of appeal was tardy for a number of reasons. This same panel previously denied BMC's motion to dismiss and awarded costs against BMC. Undeterred, BMC continues to challenge our jurisdiction; we continue to find we have jurisdiction and reaffirm our prior order denying BMC's motion to dismiss. We decline to award further costs to McNeil on this matter.

## B.    Hostile Work Environment Claim

McNeil argues that the district court erred by dismissing her hostile work environment claim or, alternatively, by granting judgment as a matter of law following the evidence adduced at trial. McNeil contends that this claim was dismissed because the district court stated that she had not pled it. However, there was no pre-trial ruling by the district court dismissing a claim[2] or preventing McNeil from presenting all relevant evidence pertaining to any hostile work environment allegation. She points to no offer of proof of evidence that would have been adduced at trial. Whether or not she properly pled the claim under Rule 8(a) of the Federal Rules of Civil Procedure, the district court determined "I haven't seen hostile work environment in this case, I really haven't," and denied her request for a jury instruction and question on the issue. In any case, McNeil urges that evidence of a hostile workplace was a "lesser

---

[2] McNeil's record citation for the proposition that her claim was dismissed under Rule 12b(6) is to the court's post-verdict memorandum and order stating that it "ruled that Plaintiff could not continue with her claim for 'hostile work environment' on October 31, 2007," which is the date when she rested her case-in-chief at trial. McNeil's contention is, at best, disingenuous; at worst, it is deliberately misleading.

included offense for constructive discharge," so the jury necessarily heard all evidence regarding that claim.[3]  We conclude that the district court did not dismiss her claim under Rule 12(b)(6); thus, we view the district court's action in the same light as a grant of judgment as a matter of law under Federal Rule of Civil Procedure 50(a).

We consider de novo the district court's ruling on a Rule 50(a) motion for judgment as a matter of law.  Resolution Trust Corp. v. Cramer, 6 F.3d 1102, 1109 (5th Cir. 1993).

> Under this standard, we view all of the evidence "in the light and with all reasonable inferences most favorable to the party opposed to the motion."  A district court may not grant a Rule 50(a) motion "unless a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 622 (5th Cir. 2008) (citations omitted); see also Rubenstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 401 (5th Cir. 2000) ("If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment as a matter of law] is proper.") (citations omitted).

Rule 10 of the Federal Rules of Appellate Procedure requires an appellant urging that a finding or conclusion is unsupported by the evidence to "include in the record a transcript of all evidence relevant to that finding or conclusion." FED. R. APP. P. 10(b)(2).  This Court cannot conduct meaningful appellate review of a district court's decision to grant judgment as a matter of law without the

---

[3] We have not held, as urged by McNeil, that a hostile work environment claim is "a lesser included offense for constructive discharge."  Instead, we have explained that constructive discharge "requires a 'greater severity or pervasiveness of harassment than [is] required to prove a hostile environment claim'". Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998) (quoting Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992)).

testimony that would support or refute that determination. See Richardson v. Henry, 902 F.2d 414, 415-16 (5th Cir. 1990) (dismissing a challenge to the sufficiency of the evidence pursuant to Rule 10(b)(2)); Woods v. Thieret, 5 F.3d 244, 245 (7th Cir. 1993) (dismissing appeal of district court's denial of a Rule 50(b) motion because plaintiff failed to include a trial transcript in the appellate record). Here, McNeil was obligated to point to some trial testimony that would provide a legally sufficient evidentiary basis to support her claims for hostile work environment; however, she provides no citations whatsoever to any trial testimony in the appellate record.[4] Thus, her challenge is waived. Id.[5]

Whether or not the evidence McNeil presented at trial was sufficient to survive a Rule 50(a) motion – a question we do not reach because of the state of the appellate record – McNeil's primary challenge appears instead to be that the district court was inconsistent in granting Rule 50 judgment on her hostile work environment claim while allowing the jury to consider her allegations of constructive discharge. It is of no consequence that the district court permitted the jury to consider a claim requiring evidence of more pervasive or severe harassment than the claim that was barred. Under Rule 50, there either is a legally sufficient basis for a reasonable jury to find for a party on a particular issue, or there is not. See FED. R. CIV. P. 50(a). Here, McNeil has failed to show

---

[4] The only "testimonial" quotations in McNeil's appellate brief come from affidavits and other evidence filed as part of the summary judgment motion process. McNeil had the burden to come forward at trial with evidence to support her claim. Affidavits and depositions not admitted at trial cannot provide the evidence lacking from the trial or substitute for a trial transcript.

[5] Even if we were to consider the pre-trial affidavits and depositions discussed in her appellate brief as if they were contained in a trial transcript properly presented to us, which we do not, McNeil's claim would still fail. McNeil points to examples of boorish behavior by Adams. However, among other failings, McNeil fails to point to any competent evidence that Adams's actions were motivated by race. See Ramsey v. Henderson, 286 F.3d 264, 269-70 (5th Cir. 2002); see also Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996) ("The fact that the actor involved in both employment decisions is also a member of the protected class only enhances the inference" that age-based animus was not the motive behind poor treatment).

such a basis. Although the district court could have granted judgment as to McNeil's constructive discharge claim, her hostile environment claim does not thereby become valid. Accordingly, the district court's grant of judgment as a matter of law was not erroneous, and is therefore AFFIRMED.

## C.    Attorney's Fees

McNeil also argues on appeal that, as the prevailing party in a breach of contract suit, she was entitled to an award of attorney's fees under Texas law. The district court concluded that McNeil failed to demonstrate she was entitled to her attorney's fees. We review the district court's award of attorney's fees for abuse of discretion, although conclusions of law underlying the award are reviewed de novo. Volk v. Gonzalez, 262 F.3d 528, 534 (5th Cir. 2001).

Chapter 38 of the Texas Civil Practice and Remedies Code permits a prevailing party to recover attorney's fees and costs in a breach of contract case. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1997 & Supp. 2005). To recover attorney's fees under Chapter 38:

> (1) the claimant must be represented by an attorney; (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented."

TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 (1985). The statute is to be "liberally construed to promote its underlying purposes. TEX. CIV. PRAC. & REM. CODE ANN. § 38.005 (1985); Jones v. Kelley, 614 S.W.2d 95, 100 (Tex. 1981).

There is no dispute that McNeil was represented by an attorney and that BMC did not tender payment of the remainder of McNeil's sign-on bonus. The only issues presented on appeal are (1) whether McNeil presented her claim to BMC and, (2) if not, whether she is still entitled to her attorney's fees on the basis of successfully defending against BMC's contract counterclaim.

1. Presentment

Under § 38.002, presentment is required to permit a party an opportunity to pay the claim before incurring the obligation for attorney's fees. Brainard v. Trinity Universal Ins. Co., 216 S.W.3d 809, 818 (Tex. 2006). No particular form of presentment is required; even an informal presentment is sufficient. See Jones, 614 S.W.2d at 100.

Here, McNeil asserts that she presented her claim on or about March 17, 2005, the day of her exit interview. According to McNeil's sworn affidavit, she demanded the remainder of her sign-on bonus during her meeting with Human Resources Director Diana Root.[6] She claims that while BMC did not state that it would not pay the sign-on bonus, it did provide McNeil a letter stating its position that McNeil had herself breached the sign-on bonus and relocation agreement. McNeil contends that this exchange constitutes sufficient presentment under Texas law.[7]

Under the plain language of § 38.002, McNeil could not have presented her breach of contract claim on March 17, 2005, because at that time there was no "just amount owed" by BMC. Accordingly, there was no "claim" to present. "A breach of contract does not occur until 'a party fails or refuses to do something he has promised to do.'" Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc., 529 F.3d 649, 666 (5th Cir. 2008) (quoting Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex. App.–Houston [1st Dist.] 2003, pet. denied)). The specific contractual claim for which BMC has been held liable was nonpayment of the second installment of McNeil's sign-on bonus, an obligation which was not due any earlier than the

---

[6] McNeil also alleges that she had discussions about her bonus after this date; however, the citation she gives is to an e-mail filed as part of the pre-trial proceedings regarding a "Q4" performance bonus, not the $20,000 "sign-on bonus."

[7] McNeil's only evidence on this point is a post-trial affidavit in which she recounts the March 17 conversation.

date McNeil's resignation was effective and BMC paid McNeil's final paycheck on March 31, 2005. Because McNeil simply asked that BMC meet its future contractual obligation, there was on March 17 no claim for a just amount owed and, therefore, no presentment under § 38.002. See Brainard, 216 S.W.3d at 818.

McNeil argues that BMC undoubtedly was aware of McNeil's claim as a result of the filing of this lawsuit, but still chose not to pay it. However, the filing of a lawsuit does not establish presentment under Texas law. Jim Howe Homes, Inc. v. Rogers, 818 S.W.2d 901, 904 n.3 (Tex. App.–Austin 1991, no writ). McNeil failed to meet the Texas presentment requirement and, as a result, is not entitled to her attorney's fees incurred in the prosecution of her breach of contract claim.

2. Successful Defense of Counterclaim

McNeil further argues that, independent of being entitled to attorney's fees for the successful prosecution of her contract claim, she is entitled to attorney's fees for the successful defense of BMC's counterclaim. McNeil concedes that a defendant is not entitled to attorney's fees for a successful defense of a breach of contract action, but she cites De La Rosa v. Kaples, 812 S.W.2d 432, 434 (Tex. App.–San Antonio 1991, writ denied), overruled on other grounds, Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997), for an exception to that general rule where the matters encompassed by a claim and a counterclaim are indistinguishable. In De La Rosa, the Texas Court of Appeals in San Antonio held:

> Although Article 2226 and § 38.001 do not provide for attorney's fees for the pure defense of a claim, "there is an exception to the general rule of law for cases in which the matters encompassed by the claim and counterclaim are indistinguishable, where they arose from the same transactions, where the same facts required to prosecute the claim are required to defend against the counterclaim"; under these circumstances, attorney's fees are appropriate.

812 S.W.2d at 434 (quoting Veale v. Rose, 657 S.W.2d 834, 841 (Tex. App.–Corpus Christi 1983, writ ref'd n.r.e.).

The quote from De La Rosa addresses a different issue than that presented here; that quote considers whether a successful party to a breach of contract case is required to segregate his attorney's fees incurred in the prosecution of his claim from those incurred in defense of an intertwined counterclaim. See Veale, 657 S.W.2d at 841. In Veale, which was quoted by De La Rosa, plaintiffs and defendants sued one another for breach of contract arising out of the same facts. Veale, 657 S.W.2d at 836. The plaintiffs prevailed on their breach of contract claim, and in proving attorney's fees, did not segregate the fees related to prosecution of their claim from the fees related to the defendants' claim. Id. at 841. Defendants argued that awarding attorney's fees was unlawful because a party cannot recover attorney's fees for the pure defense of a claim. Id. The court of appeals set out the above-quoted language and concluded that because the claim and counterclaim were interrelated, segregation was unnecessary and the award of attorney's fees for both prosecution of the claim and defense of the counterclaim was proper. Id.; see also G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co., 177 S.W.3d 537, 551 (Tex. App.–Dallas 2005, no pet.) (De La Rosa "permits recovery of attorney's fees for defense of a claim when (1) a party is entitled to attorney's fees for the prosecution of a claim and (2) the claim and counterclaim are so interrelated that segregation of fees incurred in prosecution of the claim and defense of the counterclaim is not necessary.") As discussed above, McNeil failed to show that she was entitled to attorney's fees for prosecution of her breach of contract claim, so the potential exception permitting recovery of attorney's fees for defense of an intertwined counterclaim does not apply. See id.[8]

---

[8] We note that, after these decisions, the Texas Supreme Court decided a case under a different fee-shifting statute. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313 (Tex.

Accordingly, McNeil is not entitled to attorney's fees, and the district court's order is AFFIRMED.

---

2006). The court held that segregation of fees between recoverable and unrecoverable claims is required. Id. It explained that intertwined facts are not enough to avoid this requirement: "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." Id. at 313-14. Because we conclude that no fees are recoverable, we need not reach the issue of whether segregation would have been required in this case between prosecution of the breach of contract claim and defense of the breach of contract counterclaim.